OPINION OF THE COURT
Martin B. Stecher, J.
The plaintiff is an attorney who has brought three separate actions for services rendered and on account of retainer agreements. The three actions were tried jointly.
The plaintiff entered into a retainer with each of the three affiliated organizations: the Local 11 Chain Service Restaurant & Luncheonette Union; the Trustees of the Local 11 Pension Fund; and the Trustees of the Local 11 Welfare Trust Fund. Under the terms of the agreements with the respective trustees, the plaintiff was to receive $16,000 per annum from each fund, payable $4,000 quarter annually and was to "render any and all legal services which shall be required in the usual course of the Trustees’ business pertaining to the said Trust Fund including * * * collection of delinquent contributions from employers.” The term of the plaintiff’s employment was from October 1, 1971 to September 30, 1974.
During the final year of the agreement Local 11 and its trust funds were placed in receivership by the international union and the receiver, apparently in order to clean house, discharged certain officials as well as the union’s attorney, the plaintiff herein. At the time of discharge, the plaintiff had received the first quarterly installment from each of the funds. I find that he was dismissed without cause, and that each of the said funds is indebted to the plaintiff in the sum of $12,000 with interest from May 15, 1974, an average interest date. An agreement of general retainer for a fixed period is like any other contract and on its breach the attorney is not limited to quantum meruit but may sue for the contract sum (Greenberg v Remick & Co., 230 NY 70; Matter of Local 2, Int. Union v Davis, 27 AD2d 650). The plaintiff’s claim against the funds for additional fees for litigating the collection of delinquent accounts payable to the respective funds must be resolved in favor of the defendant trustees. The plaintiff prepared the retainer agreements (Rentways, Inc. v O’Neill Milk & Cream Co., 308 NY 342, 348), and any ambiguity within them must be resolved against the plaintiff. He has not established that the collection actions were other than "in the usual course of the Trustees’ business,” nor has he ever treated collection suits as being outside the retainer. The *934 inference to be drawn from the manner in which the parties themselves interpreted paragraph 2 of each of the trustees’ agreements (City of New York v New York City Ry. Co., 193 NY 543, 548) as well as the express references to Federal and Supreme Court actions requires me to conclude that the plaintiff is entitled to no added compensation for collection suits.
The retainer agreement entered into with the union itself was for a two-year term, commencing October 1, 1971 and ending September 30, 1973. The. agreement provided, however, that the retainer "shall continue from year to year thereafter unless either party terminates this agreement at the end of another contract year.”
The receiver, by letter dated October 19, 1973 terminated the services of the plaintiff "effective immediately.” The plaintiff contends that having been given no notice at an earlier date, he is - entitled to compensation in the agreed sum of $5,200 for the 12-month period beginning October 1, 1973 and ending September 30, 1974.
Time was not made of the essence in giving notification nor was the union required to give the notice before the end of the contractual period. A reasonable period of time following the last day of the retainer agreement must be allowed. I do not consider 19 days to be an unreasonable period and I therefore hold that timely notice was given, and that the plaintiff may not recover under the retainer agreement for any period subsequent to September 30, 1973. No services having been proved during those 19 days, no allowance in quantum meruit may be had.
The retainer agreement with the union (as distinguished from the trust funds) provided that the compensation set forth in the retainer was for "legal services which shall be required in the usual course of the union’s business, including unlimited consultation and advice, preparation of forms for administrative agencies, negotiations and preparation of contracts, all proceedings before labor tribunals, arbitrations and any related matters.” The agreement further requires the union to pay in addition to the retainer fee "any and all disbursements” and "further reasonable compensation for any proceedings which, in the opinion of the parties hereto, are beyond the scope of the usual course of the union’s business, including litigation and proceedings in the Federal courts or the State courts. The parties shall, for each case, agree upon *935 the additional fee for such services.” The plaintiff testified without substantial contradiction, to three actions in which he participated as attorney on behalf of the union: one in this court and two in the United States District Court for the Southern District of New York. One action against the union and its officers was brought by a union official who had been removed from office and suspended for a period of time from union membership. He sought reinstatement to his union office. I find this action to have been outside the scope of the union retainer and I find credible the plaintiff's testimony concerning the services which he render, as well as his estimate that he necessarily spent some 200 hours on this case (which had yet to go to trial when the plaintiff was discharged). A second action was brought against the union in the Supreme Court, New York County for libel, and I find credible the plaintiff's estimate that he expended 25 hours, necessarily, in the defense of this action. The third action was brought in the District Court by the Secretary of Labor against the union, to set aside the union elections. I find credible the plaintiff’s estimate that he necessarily occupied 120 hours in the defense of this action.
I find that the fair and reasonable value of the plaintiff’s services, including those of the other attorneys in his office who worked with him or these three cases was $60 an hour and that for services rendered in these three actions, the plaintiff is entitled to recover $20,700, with interest from December 31, 1973.
In connection with the action brought by the former union officer for reinstatement and in connection with other matters, the plaintiff submitted to the defendants a bill for disbursements in the total sum of $14,433.27. I find that all of these disbursements were authorized expressly or by implication and that the plaintiff is entitled to compensation therefor. I further find that he has received $1,550 to offset these disbursements and is, therefore, entitled to recover the additional sum of $12,883.23, with interest from December 31, 1973.
Subsequent to the accrual of these causes of action, Local 11 went through two mergers, hereafter described, and the trustees of the contracting trust funds transferred all of their assets to the Hotel & Restaurant Employees and Bartenders International Union Pension Fund and the Hotel & Restaurant Employees and Bartenders International Union Welfare Fund, respectively. It appearing that all of these bodies are *936 unincorporated associations, the issue arises as to who may be liable for the indebtednesses to the plaintiff.
The Pension Fund and Welfare Trust Fund present no problem. The Local 11 Pension Fund, on April 21, 1975, merged "all of the assets and liabilities” of the Fund into the Hotel & Restaurant Employees and Bartenders International Union Pension Fund which, by the agreement of April 21, 1975, "hereby accepts the merger of all of the assets and liabilities of said Local 11 Pension Fund.” A similar agreement was entered into between the Local 11 Welfare Trust Fund and the Hotel & Restaurant Employees and Bartenders International Union Welfare Fund. The International Funds having assumed the liabilities of the local funds, judgment will be directed accordingly.
Local 11, by agreement dated January 25, 1974, merged on February 28, 1974, with Locals 60 and 71 to form a new Culinary and Bartenders Union, Local 45. The agreement provided that the service record of each member would continue in the new union and that the dues of each member would continue as before until another arrangement could be made. The bulk of the balance of the agreement involved the appointment of officers, a description of their duties, and the preservation of the rights, employment, salaries, expense accounts and automobiles of elected and appointed officers of the merged unions. The agreement makes no reference to the assets or liabilities of the respective union except to state that they "shall merge” and the agreement is silent even as to the collective bargaining agreements which each of the locals had with the employers of their members. (At the time of the merger, Local 11 had 7,128 members; Local 60 had 1,416 members; and Local 71 had 1,578 members. Local 11 had cash assets of $31,719.19; Local 60 had cash assets of $30,910.96; and Local 71 had cash assets of $180.41.)
By "order” of the International Union, dated August 8, 1975, the new Local 45 merged with Locals 72 and 178 to form a new Hotel & Restaurant Employees and Bartenders Union, Local 69. Local 69, by the terms of the order was designated as "successor in interest” to Locals 45, 72, and 178 and expressly assumed the liabilities of each. (Several other unions have since been merged into Local 69.)
 By amendment to the pleadings it was the resultant Local 69 which became the named defendant for the causes of action originally asserted against Local 11. Local 69 resists the *937 entry of judgment against it on the ground that an action may only be maintained against an unincorporated association where the plaintiff can plead and prove a cause of action against every individual member of such an association (General Associations Law, § 13; Martin v Curran, 303 NY 276). While that statement of law is undoubtedly correct as a general proposition, there are exceptions to it and this action falls within those exceptions. Local 45 although it did not expressly, in its merger agreement, assume the liabilities of Local 11, it did as a matter of fact take possession of not only all of its assets but the liabilities as well. At the time that Local 11 merged into Local 45 there was outstanding a judgment entered by virtue of a settlement brought by a former officer of approximately $112,000. Local 45 borrowed the funds to pay the judgment from the International Union and carried the obligation to the International Union as an indebtedness on its books. (The obligation is, of course, now carried as an obligation on the books of Local 69.) All outstanding bills of Local 11, such as utilities, were paid by Local 45. Local 45 took over the rental real property occupied by Local 11 and although there is no evidence of an assumption of lease, there is evidence that the obligations were, in fact, assumed, Local 45 remaining on the premises as tenant and paying rent directly to the Local 11 landlord. More significantly, of course, Local 45 took over all of the collective bargaining agreements of Local 11 and both observed them and enforced them. I find from the evidence that Local 45 assumed all of the assets and obligations of Local 11 and has thus assumed the obligation to the plaintiff. (Local 69, of course, expressly assumed Local 45’s obligations.)
Another ground exists in law for the imposition on Local 45 (and therefore on Local 69) of the obligations of Local 11 which existed at the time of the initial merger. The fact that an association does not have the same membership at the time an action is begun as it had at the time the cause of action arose, is no impediment to the entry of judgment against that association. (Cohn v Borst, 36 Hun 562; Rankin v Killion, 190 Misc 26, affd 273 App Div 946.) As the court stated in Cohn v Borst (supra, p 564), "That the body is fluctuating in its membership does not present any obstacle to the recovery of the judgment, however it may affect its collection.” The language just quoted had reference to that portion of the law presently set forth in section 16 of the General *938 Associations Law which requires a separate action to be brought against the individual members of an association in order to enforce the judgment previously obtained against the association itself. It is quite true that the judgment which shall be entered herein against Local 69 may in the first instance only be collected from Local 69’s assets; and should the plaintiff thereafter move against the members of Local 69 in order to enforce that judgment, difficulty may arise. That question need not be explored here; but Local 69 is today all of the prior unions that went through its merger and none of them may escape their liabilities by merging with another union.
Accordingly, judgment may be entered in favor of the plaintiff as follows: Against Al Specht, as president of Hotel & Restaurant Employees and Bartenders Union, Local 69, in the sum of $33,583.23 with interest from December 31, 1973; against Hotel & Restaurant Employees and Bartenders International Union Pension Fund in the sum of $12,000 with interest from May 15, 1974; and against Hotel & Restaurant Employees and Bartenders International Union Welfare Fund in the sum of $12,000 with interest from May 15, 1974.
Execution of the judgments shall be stayed for 15 days after entry.