**Betty JASS, Plaintiff–Appellant,**

v.

**PRUDENTIAL HEALTH CARE PLAN, INCORPORATED, a corporation, Karen Margulis and Peter J. Anderson, M.D., Defendants–Appellees.**

No. 95–2471.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 28, 1995.

Decided July 8, 1996.

**1484**

Cornelius T. Ducey, Jr. (argued), Timothy L. Donaho, Jr., Ducey Law Firm, Belleville, IL, John T. Papa, Callis, Papa, Hale, Jensen, Jackstadt, Bailey & Halloran, Granite City, IL, for Plaintiff–Appellant.

Richard J. Pautler, Lewis Mills (argued), Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, MO, Russell Scott, Dunham, Boman & Leskera, Belleville, IL, for Prudential Health Care Plan, Inc.

James E. Neville, Shari M. Brunton, Neville, Richards, Defranco & Wuller, Belleville, IL, for Karen Margolis.

Charlene A. Cremeens, Cremeens & Associates, Belleville, IL, for Peter J. Anderson.

Before MANION, ROVNER, and EVANS, Circuit Judges.

MANION, Circuit Judge.

Betty Jass underwent knee replacement surgery but was dissatisfied with the result. She sued Prudential Health Care Plan ("PruCare"), the administrator of her husband's employee benefit plan, and Karen Margulis, a nurse employed by PruCare, for vicarious liability and negligence. PruCare removed the case to federal court asserting diversity and federal question jurisdiction. Jass moved to remand. Before the district court ruled on her motion to remand, Jass amended her complaint and added a negligence claim against Dr. Peter Anderson, the treating physician who, like Jass, resided in Illinois. Even though diversity no longer existed, the district court concluded that it had federal question jurisdiction because ERISA preempted the claims against PruCare and Margulis. The district court dismissed those claims as preempted, and then remanded the remaining count against Dr. Anderson to state court. Jass appeals, claiming that the district court did not have jurisdiction over the claims against Margulis or PruCare because the pleadings in her complaint alleged only state law claims.[1]

---

1. The order remanding the claim against Dr. Anderson to state court was not appealed. The last we heard, that action was still pending.

We conclude that Jass' state law negligence claim against Margulis and her vicarious liability claim against PruCare for Margulis' alleged negligence are within the scope of § 502(a) of ERISA and therefore completely preempted. Because complete preemption is an exception to the well-pleaded complaint rule, the district court had jurisdiction over those claims. The district court also properly dismissed those claims because as written Jass failed to state a claim for which ERISA provides relief. However, because we recharacterized Jass' vicarious liability claim against PruCare for Margulis' alleged negligence as a denial of benefits claim, Jass should be given the opportunity to amend her complaint to request appropriate relief under ERISA. Further, we conclude that, while the vicarious liability claim against PruCare for Dr. Anderson's alleged negligence is not within the scope of § 502(a), it is preempted by § 514 of ERISA because it "relate[s] to" the underlying benefit plan. Preemption under § 514, known as "conflict preemption," provides a defense to Jass' state law claims against PruCare for Dr. Anderson's alleged negligence. Thus, this claim was also properly dismissed. We therefore affirm in part and remand in part.

## I. Factual Background

Betty Jass participated in an employee benefit plan sponsored by her husband's employer, Granite City Steel Corporation. The defendant, PruCare, administered the plan at issue. This plan was governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 ("ERISA"). As part of the benefit plan, PruCare provided participants a list of physicians. If the participant received treatment from a listed physician, PruCare paid a higher percentage of the medical expenses. Dr. Peter J. Anderson was a physician named in PruCare's list of participating physicians.

On January 8, 1992, Jass was admitted to St. Elizabeth's Hospital in Granite City, Illinois, under the care of Dr. Anderson, who performed a complete knee replacement surgery for Jass. Jass claims that her condition required a course of physical therapy to rehabilitate her knee, but that Karen Margulis, an agent of PruCare, determined that such treatment was not necessary, and as a result Jass was prematurely discharged from the hospital without the necessary rehabilitation. Jass claims that this denial of necessary treatment caused her to suffer permanent injury to her knee.

Based on the above facts, Jass filed a complaint in state court stating a claim of negligence against Karen Margulis and a vicarious liability claim against PruCare for Margulis and Dr. Anderson's alleged negligence.[2] With Margulis' consent, PruCare removed the case to federal court, asserting both diversity jurisdiction and federal question jurisdiction premised on ERISA preemption. Jass moved to remand the complaint contesting both bases of jurisdiction.[3]

■ While her motion to remand was pending, Jass amended her complaint to state a claim for medical malpractice against

---

**2.** In her complaint, Jass did not name Dr. Anderson as a defendant, although he was named as a respondent in discovery pursuant to Section 2–402 of the Illinois Cod of Civil Procedure. *See Roe v. O'Donohue*, 38 F.3d 298, 300 (7th Cir.1994) (a "respondent in discovery" pursuant to 735 ILCS 5/2–402 is a category of a nondefendant). Section 2–402 provides that "[t]he plaintiff in any civil action may designate as respondents in discovery in his or her pleading those individuals or other entities, other than the named defendants, believed by the plaintiff to have information essential to the determination of who should properly be named as additional defendants to the action." 735 ILCS § 5/2–402.

**3.** In her motion to remand, Jass claimed that diversity of jurisdiction did not exist because both she and Dr. Anderson were citizens of Illi-

nois. But at the time she filed her motion to remand, Dr. Anderson was not a party in the lawsuit, but merely a respondent-in-discovery. Thus, his citizenship for purposes of diversity was irrelevant. *See, e.g., Murphy v. Schering Corp.*, 878 F.Supp. 124, 125–26 (N.D.Ill.1995) (ignoring citizenship of respondent in discovery for purposes of determining jurisdiction, while noting that later joinder of respondent in discovery may destroy diversity).

The original complaint also alleged that Margulis was a citizen of Illinois. However, Margulis filed an affidavit averring that she is not and has never been a citizen of Illinois. Jass did not contest this representation in her response to the motion to remand, nor does she challenge it on appeal.

Dr. Anderson. This joinder destroyed diversity because both Jass and Dr. Anderson were Illinois citizens. Normally, when a plaintiff seeks to join a non-diverse party, the court may either deny joinder or permit joinder and remand the entire action to state court. *See* 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.") But in this case, the district court concluded that joinder of Dr. Anderson, while destroying diversity jurisdiction, did not destroy subject matter jurisdiction because, owing to ERISA preemption, federal question jurisdiction still existed over Jass' claims against Margulis and PruCare. Also relying on ERISA preemption, the court dismissed Jass' claims against PruCare and Margulis. Because it had dismissed the underlying federal claims, the district court refused to exercise supplemental jurisdiction over Dr. Anderson and instead remanded the remaining case against him to state court. Jass appeals.

## II. Analysis

### A. Overview

On appeal, Jass argues that the district court erred in concluding it had jurisdiction over her claims against Margulis and PruCare based on ERISA preemption because the well-pleaded complaint alleged only state-law claims of negligence and vicarious liability, neither of which presents a federal question.

This presents several difficult and technical issues. To sort them out we will first need to examine the well-pleaded complaint rule and the "complete preemption" exception to that rule. After determining how that exception applies to ERISA, we consider the difference between the jurisdictional doctrine of "complete preemption" and the defense of "conflict preemption." After setting forth the interplay between the well-pleaded complaint rule, and complete and conflict preemption under ERISA, we address whether subject matter jurisdiction exists over Jass' claims against PruCare and Margulis. These claims total four: (1) the

negligence claim against Margulis; (2) the vicarious liability claim against PruCare for Margulis' alleged negligence; (3) the vicarious liability claim against PruCare for Dr. Anderson's alleged negligence; and (4) the vicarious liability claim against PruCare for Dr. Anderson's alleged negligence, under the alternative theory of ostensible agency. Finally, we consider the propriety of the district court's dismissal of each of these claims.

### B. The Well–Pleaded Complaint Rule and Complete Preemption

For federal question jurisdiction to exist, a case must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Naturally courts begin with a review of the complaint. "Ordinarily a court determines whether there is federal question jurisdiction by examining the plaintiff's well-pleaded complaint, for '[i]t is long-settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law.'" *Rice v. Panchal,* 65 F.3d 637, 639 (7th Cir.1995) (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)). "Thus the defendant cannot cause a transfer to federal court simply by asserting a federal question in his responsive pleading." *Rice,* 65 F.3d at 639. The issues raised in the plaintiff's complaint, not those added in the defendant's response, control the litigation.

Although a preemption defense cannot be the basis for original federal jurisdiction, "the Supreme Court has fashioned an exception to this rule where Congress has completely preempted a given area of state law." *Lister v. Stark,* 890 F.2d 941, 943 (7th Cir. 1989). This exception was first announced in *Avco Corp. v. Aero Lodge No. 735, etc.,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), when the Supreme Court held that state law claims within the scope of § 301 of the Labor Management Relations Act were removable to federal court.

Since *Avco,* the "complete preemption" doctrine has become a mainstay of jurisdictional jurisprudence, although "[t]he use of the term 'complete preemption' is unfortu-

nate, since the complete preemption doctrine is not a preemption doctrine but rather a federal jurisdiction doctrine.'" *Lister,* 890 F.2d at 943 n. 1. This jurisdictional doctrine provides that "to the extent that Congress has displaced a plaintiff's state law claim, that intent informs the well-pleaded complaint rule, and a plaintiff's attempt to utilize the displaced state law is properly 'recharacterized' as a complaint arising under federal law." *Rice,* 65 F.3d at 640 n. 2 (citing *Taylor,* 481 U.S. at 64, 107 S.Ct. at 1547). Thus, federal subject matter jurisdiction exists if the complaint concerns an area of law "completely preempted" by federal law, even if the complaint does not mention a federal basis of jurisdiction. *Rice,* 65 F.3d at 642.

### C. Complete Preemption, Conflict Preemption, and ERISA

In *Taylor,* the Supreme Court extended the "complete preemption" exception to the well-pleaded complaint rule to ERISA cases. *Taylor* held that the "complete preemption" doctrine applied to certain ERISA claims because Congress intended "to make all suits that are cognizable under ERISA's civil enforcement provisions federal question suits." *Lister,* 890 F.2d at 944 (citing *Taylor,* 481 U.S. at 63–64, 107 S.Ct. at 1546–47).

Following *Taylor,* numerous cases relied on ERISA preemption as an independent basis of federal subject matter jurisdiction. However, because the *jurisdictional* doctrine of "complete preemption" included the word "preemption," confusion arose between the jurisdictional doctrine and the federal defense of preemption, known as "conflict preemption."

■ In *Rice,* we sought to clarify the distinction between "complete preemption" and "conflict preemption" under ERISA. *See also, Warner v. Ford Motor Co.,* 46 F.3d 531 (6th Cir.1995) (explaining the difference be-

tween "complete preemption" and "conflict preemption" under ERISA). We began by looking at the development of the "complete preemption" doctrine in general, and more specifically as applied to ERISA. Against that backdrop and citing *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 9–12, 103 S.Ct. 2841, 2846–48, 77 L.Ed.2d 420 (1983), and *Taylor,* 481 U.S. at 63, 107 S.Ct. at 1546, we held that a claim brought "under ERISA, § 502(a) provides the basis for complete preemption whereas § 514(a) provides the basis for conflict preemption."[4] *Rice,* 65 F.3d at 639–40. Three factors are relevant for determining whether a claim is within the scope of § 502(a): (1) whether the "plaintiff [is] eligible to bring a claim under that section;" *id.* at 641(2) whether the plaintiff's "cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a)," *id.*; and (3) whether the plaintiff's "state law claim cannot be resolved without an interpretation of the contract governed by federal law." *Id.* at 644.

The remaining discussion in *Rice* concerned whether a state law vicarious liability claim fell within ERISA § 502(a) and was completely preempted or was merely subject to § 514(a) conflict preemption. As in this case, *Rice* was a lawsuit against a plan administrator for vicarious liability based on the alleged negligence of one of the plan's listed physicians. We concluded in *Rice* that the plaintiff's vicarious liability claim fell within § 514(a) rather than section § 502(a) and therefore was not subject to "complete preemption" under ERISA. Accordingly, we remanded to the district court for dismissal for lack of subject matter jurisdiction. In doing so, however, we noted that the state law claim may be susceptible to "conflict preemption" under § 514(a), but merely as a

---

4. Section 502(a) provides:
 A civil action may be brought-
 (1) by a participant or beneficiary-
 (A) for the relief provided for in subsection (c) of this section, or
 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

Section 514(a) provides:
 Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

defense and not a basis for federal jurisdiction. *Id.* at 646 n. 10.

### D. Jurisdiction Over Jass' Vicarious Liability Claim Against PruCare for Dr. Anderson's Alleged Negligence

██ Jass claims vicarious liability against PruCare for Dr. Anderson's alleged negligence. Specifically she claims that because PruCare listed Dr. Anderson as a preferred caregiver (apparently one who would charge less), PruCare stands in his shoes and is thus liable for his negligent performance. These claims are identical to the claims brought in *Rice;* both sets of claims sought recovery from an ERISA plan administrator for vicarious liability based on the alleged negligence of a listed physician.

██ A claim brought against a plan administrator for vicarious liability of an actual or apparent agent, while subject to "conflict preemption" under § 514(a), *see infra* 18–23, is not subject to the jurisdictional doctrine of "complete preemption" under § 502(a). *Rice,* 65 F.3d at 646. Therefore, the district court erred in concluding that it had federal question jurisdiction over these claims against PruCare based on ERISA preemption. *Id.*

Whether the negligence claim against Margulis and the claim of vicarious liability against PruCare for Margulis' alleged negligence are subject to "complete preemption" is another question, and another potential basis for federal subject matter jurisdiction. Therefore before we determine whether the vicarious liability claim against PruCare for Dr. Anderson's alleged negligence should be dismissed for lack of subject matter jurisdiction, we must first determine whether there is another basis for federal subject matter jurisdiction under that claim.

### E. Jurisdiction Over Jass' Claim Against Margulis

██ In her complaint, Jass alleged a negligence claim against Margulis. Specifically, she alleged that Margulis, who was a registered nurse, had the "duty to manage, control and determine the medical care required by the Plaintiff to treat her medical condition as herein described" and that Margulis was negligent in her duty because she "negligently and carelessly failed to see that the Plaintiff received appropriate therapy subsequent to her surgery; negligently and carelessly secured the discharge of the Plaintiff from the hospital on January 18, 1992; and negligently and carelessly abandoned the Plaintiff." And that this negligence "caused . . . permanent damage and injury to her right knee. . . ."

Jass argues that her claim against Margulis is purely a state law medical negligence claim and that she "has not alleged a cause of action under any federal law nor has she sought damages or compensation under federal law." Therefore, Jass argues, her claim against Margulis cannot be "completely preempted" by ERISA.

██ While Jass presented her claim against Margulis as a state law negligence claim, "[w]e know that if [Plaintiff's] state law claim is within the scope of § 502(a) it is completely preempted regardless of how [s]he has characterized it." *Rice,* 65 F.3d at 642. We also know that a plaintiff cannot avoid complete preemption, and thereby "deny a defendant access to federal court if the actual nature of the complaint is federal," *Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 911 (7th Cir.1993), by artfully pleading a complaint so as to omit facts that indicate federal jurisdiction. *Franchise Tax,* 463 U.S. at 22, 103 S.Ct. at 2852–53. See also *Burda v. M. Ecker Co.,* 954 F.2d 434, 438 n. 3 (7th Cir. 1992) ("A plaintiff also may not artfully omit facts that indicate federal jurisdiction."). "Therefore, a federal court may, in some situations, look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." *Id.* at 438. Such a situation exists where, as here, federal law displaces an area of state law and the plaintiff frames her complaint in such a way as to avoid the appearance of "complete preemption." *Shannon v. Shannon,* 965 F.2d 542, 546 (7th Cir.1992) (removal of complaint is proper even if federal jurisdiction under ERISA § 502(a) is not evident from the complaint); *Rice,* 65 F.3d at 645 n. 8 ("Of course, this decision does not give plaintiffs

license to avoid complete preemption by artful pleading."). *Cf. Oglesby v. RCA Corp.*, 752 F.2d 272, 278 (7th Cir.1985) (holding that the court properly looked beyond the complaint to determine if a claim was subject to complete preemption under the Labor Management Relations Act).

The question, then, is whether Jass' claim against Margulis is "really" based on *ERISA, Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1075 (7th Cir.1992), or in other words whether the claim is best recharacterized as a 502(a)(1)(B) claim to recover benefits due under the terms of the plan. *Taylor*, 481 U.S. at 64, 107 S.Ct. at 1547 (question is whether complaint that raises only state law causes of action is properly recharacterized as an action arising under federal law); *Rice*, 65 F.3d at 641 (the question is whether plaintiff's claim against defendant is within the scope of § 502(a), even though the complaint alleged only state common law contract and tort claims). This question requires us to apply the factors set forth in *Rice*, as listed above. *See supra* at 1488. And in applying these factors, as noted above, we are not limited by the complaint, but may look beyond it to assure ourselves "that the plaintiff has not by 'artful pleading' sought to defeat defendant's right to a federal forum." *Oglesby*, 752 F.2d at 277–78 (quoting *Salveson v. Western States Bankcard Assoc.*, 525 F.Supp. 566, 572 (N.D.Cal.1981)).

The *Rice* factors all support the conclusion that Jass' claim against Margulis is really a § 502(a) denial of benefits claim. First, as a plan participant Jass was entitled to bring suit under § 502(a). In fact, the record contains an earlier complaint that Jass filed arising out of the same events. In that complaint against Margulis and PruCare, Jass sought recovery for PruCare's denial of benefits concerning rehabilitation treatment.

Second, Jass' claim against Margulis is in effect a claim for denial of benefits. Jass alleged that Margulis "determined that said course of treatment was not medically necessary and she then proceeded to secure the discharge of the Plaintiff from the hospital on January 18, 1992." This was a determination of benefits within the meaning of ERISA. *See Corcoran*, 965 F.2d at 1331–32 (utiliza-

tion review nurse's determination, while including a medical determination, was nonetheless a benefits determination); *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 357 (3d Cir.1995) (Section 502(a)(1)(B) claim to recover benefit due under the plan "is concerned exclusively with whether or not the benefits due under the plan were actually provided").

Jass attempts to obscure the federal nature of this case by alleging that Margulis "voluntarily assumed a duty to manage, control and determine the medical care required by the Plaintiff to treat her medical condition as herein described." Jass also attempts to present her claim against Margulis as something other than a denial of benefits claim by creating the impression that Margulis provided her with medical services. She does this by stressing the fact that Margulis was a "registered nurse." What Jass artfully omits, however, is that Margulis was a utilization review administrator for PruCare who, pursuant to the position, determined the appropriate health benefits due Jass under the Certificate of Insurance.

The record also reveals that Margulis' only contact with Jass was in her capacity as an administrator for PruCare; the record includes an affidavit of Margulis stating that at all the times alleged in Jass' complaint she "acted as a registered nurse in the course and scope of my employment with The Prudential and I have never taken any action regarding plaintiff other than through my responsibilities as an employee of The Prudential." She further stated that her "sole and exclusive contact with plaintiff was participating in the determination of benefits due to plaintiff under the terms of the applicable ERISA plan." Jass cannot avoid "complete preemption" by deceptively alleging that Margulis "voluntarily assumed duties" which are identical to her duties as a utilization review administrator for PruCare (especially in the wake of her earlier complaint that asserted pretty much the opposite).

Third, Jass' negligence claim against Margulis cannot be resolved without interpreting the benefits contract because that contract provided the benefits to which Jass was entitled. *See Rice*, 65 F.3d at 644 (where state law creates a quality standard by which per-

formance of the contract is evaluated then that state law is completely preempted.) As the Supreme Court stated in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987), "Congress ... ma[d]e clear its intention that all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by § 502(a)."

In response, Jass argues that she is not availing herself of the ERISA statute, but is merely seeking a state law remedy. In so arguing, Jass misses the import of ERISA complete preemption—the preemptive force of ERISA is so powerful that it converts "a state law claim into an action arising under federal law," even if the plaintiff does not want relief under ERISA. *Taylor*, 481 U.S. at 64, 107 S.Ct. at 1547. This is true even though the same facts might be sufficient to state a state law cause of action for negligence. *Taylor*, 481 U.S. at 66–67, 107 S.Ct. at 1547–48 ("Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court ... though [the suit] purports to raise only state law claims...."). Such a claim that is within the civil enforcement provisions of 502(a) is completely preempted. *Id.* And since ERISA provides the exclusive remedies for beneficiaries "to recover benefits from a covered plan," *id.* at 62–63, 107 S.Ct. at 1545–46, Jass' negligence claim against Margulis, a utilization review administrator for the plan, is properly recharacterized as a claim arising under federal law. *Id.* Therefore, the district court had subject matter jurisdiction over this claim.[5]

### F. Dismissal of Jass' Claim Against Margulis

■ With subject matter jurisdiction, the district court had the power to dismiss the claim against Margulis. It did so, however, on the wrong basis. The district court dismissed the claim against Margulis as preempted by ERISA because it "relates to" a benefit plan. However, the "relates to" language of ERISA deals with "conflict preemption" of a state law claim. Here, as we held above, the claim against Margulis is really a federal denial of benefits claim under § 502(a) and not a state law claim.

The claim was nonetheless properly dismissed because Jass sued Margulis in an individual capacity and "ERISA permits suits to recover benefits only against the Plan as an entity...." *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir.1985). *See also*, 29 U.S.C. § 1132(d)(2) ("Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter."). Therefore, Margulis is the wrong defendant. The appropriate defendant for a denial of benefits claim would be the Plan, which in this case is PruCare.

### G. Jass' Vicarious Liability Claim Against PruCare for Margulis' Alleged Negligence

■ While Jass did not allege a denial of benefits claim against PruCare, she did allege that "at all times relevant hereto, [Margulis] was ... an agent, servant and/or employee of Prudential Health Care Plan, Inc." and that PruCare was vicariously liable for

---

5. While not directly addressing the issue involved here, *Corcoran*, 965 F.2d 1321, and *Dukes*, 57 F.3d 350, support our conclusion. In *Corcoran*, plaintiff filed suit against a utilization review service organization that had denied her medical benefits and allegedly caused her to miscarry. The Fifth Circuit in *Corcoran* concluded that Corcoran's claim against the utilization review provider was preempted by ERISA. Although the court did not distinguish between "complete preemption" and "conflict preemption," a thorough reading of that opinion demonstrates that the court had concluded that Corcoran's claim was really an ERISA claim and "completely preempted." The Third Circuit concluded as much in *Dukes*, 57 F.3d at 360, stating that "[t]he U.S. Court of Appeals for the Fifth Circuit ruled that ERISA preempted Corcoran's claim against United and—implicitly, at least—that Corcoran's claims were completely preempted." *Dukes* also recognized in dicta that a negligence claim against a utilization review organization is "completely preempted" "because only in a utilization-review role is an entity in a position to deny benefits due under an ERISA welfare plan." *Id.* at 360–61.

Margulis' actions. Margulis' actions, as discussed above, are appropriately recharacterized as the denial of benefits. Thus, Jass' claim against PruCare for vicarious liability based on Margulis' actions is also a § 502(a) denial of benefits claim. (After all, a corporate "plan" can only deny benefits through its agents, of which Margulis was one.)[6] As such, it is completely preempted. Therefore the district court also had subject matter jurisdiction over this claim.

The district court also dismissed, as preempted, Jass' vicarious liability claim against PruCare for Margulis' alleged negligence because the claim "relates to" a benefit plan. Again, because the claim against Pru-Care is a § 502(a) denial of benefits claim, "conflict preemption" under § 514 is irrelevant.

 Jass, however, failed to request relief available under ERISA, instead seeking only compensatory damages for her injury, resulting medical expenses, pain and suffering and lost wages. Section 502(a) provides that a beneficiary may only "recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Thus, "if a claim is within the scope of § 502(a), then a participant's ability to recover damages is limited." *Rice,* 65 F.3d at 640. Monetary damages also do not constitute "other appropriate equitable relief" under ERISA. *Mertens v. Hewitt Assoc.,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (holding that "equitable relief" under section 502(a)(3) of ERISA does not include a damages remedy).

 Nonetheless, since we have recharacterized her complaint as one alleging a denial of benefits, Jass should be given the opportunity to amend her complaint to request appropriate relief under § 502(a). *Health Cost Controls v. Skinner,* 44 F.3d 535, 538 (7th Cir.1995); *Bartholet,* 953 F.2d at 1077. In the future, however, artful pleading

of an ERISA case to avoid federal jurisdiction may result in dismissal, without an opportunity to amend. *Maciosek v. Blue Cross & Blue Shield,* 930 F.2d 536, 541 (7th Cir. 1991) (affirming dismissal of ERISA claim deliberately pleaded as state law claim to avoid federal court). See *Shannon v. Shannon,* 965 F.2d 542, 553 (7th Cir.1992) (contrasting *Bartholet* and *Maciosek,* and noting that where counsel deliberately seeks to avoid a federal cause of action by filing only state law claims in a state court, "the case . . . begs dismissal.").

### H. Jass' Vicarious Liability Claim Against PruCare for Dr. Anderson's Alleged Negligence

Having concluded that federal subject matter jurisdiction exists over Jass' claims against Margulis and PruCare for Margulis' alleged negligence, we now return to the question of subject matter jurisdiction over the vicarious liability claims against PruCare for the alleged negligence of Dr. Anderson. The district court concluded that it had subject matter jurisdiction over the claim against Dr. Anderson premised on ERISA preemption. It did not. (The claim against Dr. Anderson was not "completely preempted" and therefore the claim did not arise under federal law). See *supra* at 1488. But because the district court did have federal question jurisdiction over two of Jass' other claims, it could have exercised supplemental jurisdiction over the vicarious liability claims against PruCare that were based on Dr. Anderson's alleged negligence. But the district court did not consider supplemental jurisdiction as a basis for jurisdiction over Pru-Care. When PruCare originally removed the case from state court, complete diversity existed between the plaintiff, Jass, and the two defendants, Margulis and PruCare. Not until about six months later, when Jass amended the complaint to state a claim against non-diverse defendant Dr. Anderson, did subject matter jurisdiction become a problem. Even then, the district court was working under

---

6. Again, Jass has been "artful" in her pleading. This is demonstrated by the record which includes Jass' argument in a Memorandum in Opposition to Defendants' Motion to Dismiss her original complaint. Jass argued that dismissal

was inappropriate because PruCare "wrongfully and unreasonably denied her certain medical benefits clearly due under the terms of a group insurance policy issued by PruCare to Granite City Steel."

the incorrect assumption that it had federal question jurisdiction over the vicarious liability claims against PruCare for Dr. Anderson's alleged negligence.[7] So the situation was this: The district court did not have subject matter jurisdiction over the claims against PruCare that were tied to Dr. Anderson's alleged negligence. Without a federal question under ERISA, the joinder of Dr. Anderson, who shared Jass' Illinois residency, would destroy diversity jurisdiction over this claim against PruCare unless the court exercised its supplemental jurisdiction. Since the court did not do so, the joinder of Dr. Anderson was inappropriate without remand to the state court. See Title 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the state court.").

We need not concern ourselves with the intricacies involved here, however, because when the district court subsequently remanded Jass' claim against Dr. Anderson to state court it cured the jurisdictional problem by in effect dismissing the non-diverse party. While federal jurisdiction "ordinarily depends on the facts as they exist when the complaint is filed," *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1989), or where an amended complaint is filed based on the amended complaint, *Wellness Community–National v. Wellness House,* 70 F.3d 46, 49, 50 (7th Cir.1995), both district courts and appellate courts have the authority to dismiss a nondiverse party to retain diversity jurisdiction. *Newman–Green,* 490 U.S. 826, 109 S.Ct. 2218. The district court inadvertently achieved this result when it remanded the malpractice claim against Dr. Anderson. In this appeal, the parties remaining in the underlying lawsuit are diverse, and federal question jurisdiction remains over two of the claims as well.

### I. Dismissal of Jass' Vicarious Liability Claims Against PruCare for Dr. Anderson's Alleged Negligence

We thus have jurisdiction over all claims and may now consider the merits of the dismissal of Jass' vicarious liability claims against PruCare for Dr. Anderson's alleged negligence. In Counts I of her complaint, Jass alleged Dr. Anderson was PruCare's agent, servant, or employee and that therefore PruCare was vicariously liable for his negligence. Count II similarly alleged a claim of vicarious liability against PruCare but based on the alternative theory of ostensible agency. The district court dismissed these two counts as preempted by ERISA, although failing to distinguish between "conflict" and "complete preemption." At issue here however, is the defense of "conflict preemption."[8]

The defense of "conflict preemption" is contained in section 514(a) of ERISA. That section preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan covered by ERISA." 28 U.S.C. § 514(a). The inquiry is thus whether Jass' vicarious liability claims against PruCare "relate to any employee benefit plan."

The Supreme Court explained in *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407–08, 112 L.Ed.2d 356 (1990), that this "relate to" clause "is conspicuous for its breadth" and that "[i]t establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *Central States v. Neurobehavioral Assoc.,* 53

---

7. At the time of its decision, the district court did not have the benefit of our decision in *Rice.*

8. Our conclusion that Jass' claims against PruCare for Dr. Anderson's alleged negligence are not "completely preempted" has no bearing on whether the claims are subject to the defense of conflict preemption. Complete preemption under § 502(a) is solely a jurisdictional issue, while the defense of "conflict preemption" is much broader because § 514 is much broader than § 502(a). *Rice,* 65 F.3d at 646 n. 10. *See also, Warner v. Ford Motor Co.,* 46 F.3d 531, 535 (6th Cir.1995) (explaining that state causes of action not removable under § 502(a) may still be subject to preemption under § 514).

F.3d 172, 174 (7th Cir.1995) ("The structure and legislative history indicate that the words 'relate to' are intended to apply in their broadest sense."). "ERISA preemption is, therefore, not limited to displacement of state laws affecting employee benefit plans, but rather extends to any state cause of action that has a '[c]onnection or reference to' an ERISA plan." *Id.* (quoting *Pilot Life,* 481 U.S. 41, 107 S.Ct. 1549). Moreover, "a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990).

In this case, both of Jass' vicarious liability claims against PruCare for Dr. Anderson's alleged negligence (Counts I and II) directly "relate to" the Plan. The Plan listed Dr. Anderson as a physician and provided a higher level of benefits if participants sought treatment from him. If an agency relationship existed between PruCare and Dr. Anderson, as Jass alleged, it was solely as a result of the PruCare's health care plan of which Jass was a participant. Without a benefit plan, PruCare would have no need for a relationship with Dr. Anderson and Jass would probably not have sought treatment from him. Additionally, to determine whether an actual or apparent agency relationship existed between Dr. Anderson and PruCare would require an examination of the health care benefit plan to determine the relationship between Dr. Anderson, PruCare and Jass. In fact, the health benefit plan contains a section entitled "relation among parties affected by the group contract," which states that no participating physician is an employee or agent of PruCare. We note this not to resolve the question of agency, but to highlight that Jass' claims "relate to" the health benefit plan. *Ingersoll–Rand Co.,* 498 U.S. at 139–140, 111 S.Ct. at 483 (state law wrongful discharge action under state tort and contract law "related to" a benefits plan because "the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law.").

The specific allegations in this case further support the conclusion that Jass' claims "relate to" the benefit plan. The alleged negligence of Dr. Anderson underlying the vicarious liability claims against PruCare do not assert his negligent treatment, but his negligent failure to treat. This alleged negligence directly "relate[s] to the benefit plan" because Dr. Anderson's failure to treat stemmed from Margulis' denial of benefits based on her conclusion, as PruCare's utilization review administrator, that treatment was unnecessary. *Spain v. Aetna Life Ins. Co.,* 11 F.3d 129, 131 (9th Cir.1993) (state cause of action seeking damages for negligently denying authorization of medical procedure "relates to" benefit plan); *First Nat. Life Ins. v. Sunshine–Jr. Food Stores, Inc.,* 960 F.2d 1546, 1550 (11th Cir.1992) (state law "relates to" employee benefit plan where claim is founded on failure to adhere to obligations under the plan).

Moreover, to allow Jass to proceed against a plan on a vicarious liability theory based on a physician's alleged negligent failure to treat would conflict with Congress' intent in passing ERISA. *See Shaw,* 463 U.S. at 95, 103 S.Ct. at 2899 ("In deciding whether a federal law pre-empts a state statute, our task is to ascertain Congress' intent in enacting the federal statute at issue."). In passing ERISA, Congress included certain remedies and excluded others. *Pilot Life,* 481 U.S. at 54, 107 S.Ct. at 1556–57. Congress excluded remedies against a plan for compensatory damages resulting from the denial of benefits. "[T]he federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.*

Such recovery would also conflict with Congress' intent that a plan not be subject to a myriad of state laws applying to employee benefit plans. *Safeco Life Ins. Co. v. Musser,* 65 F.3d 647, 651 (7th Cir.1995). In *Safeco,* we explained that "[w]hat Congress meant, . . . was to eliminate the prospect of conflict among the federal, state, and local laws applying to employee benefit plans by making the regulation of such plans exclu-

sively a federal matter." *Id.* "By establishing benefit plan regulation as exclusively a federal concern, Congress minimized the need for interstate employers to administer their plans differently in each State in which they have employees." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 105, 103 S.Ct. 2890, 2904, 77 L.Ed.2d 490 (1983). "Consistent with that purpose, the Court in prior cases had deemed preempted state laws that had the effect of regulating the structure or administration of ERISA plans or providing avenues outside of the ERISA framework to vindicate employees' rights under these plans." *Safeco*, 65 F.3d at 651–52. To allow a vicarious liability claim against an ERISA Plan for the alleged negligence of a listed physician would require multi-state plans to vary their plan administration to avoid strict vicarious liability under differing state laws. *See Corcoran*, 965 F.2d at 1332–33 (allowing negligence suit against utilization review service would contravene Congress' intent that plans be subject to a uniform body of law). This has been described by the Supreme Court as "particularly disruptive." *Ingersoll–Rand*, 498 U.S. at 142, 111 S.Ct. at 484. "It is foreseeable that state courts, exercising their common law powers, might develop different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction. Such an outcome is fundamentally at odds with the goal of uniformity that Congress sought to implement." *Id.; see also, Anderson v. Humana, Inc.*, 24 F.3d 889, 891 (7th Cir.1994) (holding that employee's claim of violation of state anti-deception laws arising from information provided in benefit literature was "related to" benefit plan and preempted because one set of rules should apply to all plans).

We also find *Pacificare of Oklahoma, Inc. v. Burrage*, 59 F.3d 151, 154 (10th Cir.1995), distinguishable.[9] In *Pacificare*, the Tenth Circuit held that ERISA does not preempt a claim that an HMO is vicariously liable for the alleged malpractice of one of its physicians. In its decision, the Tenth Circuit cited the lower court's rationale that a vicarious liability claim against an HMO for medical malpractice does not sufficiently "relate to" the plan so as to warrant preemption because the issue of the doctor's negligence can be resolved without reference to the benefit plan. In this case, however, Dr. Anderson's alleged negligence is intertwined with the benefits determination because the alleged negligence concerned a failure to treat where the Plan denied payment for the treatment. *Pacificare* also seems distinguishable because in that case the doctor alleged to have been negligent was "one of [the HMO's] physicians," while here Dr. Anderson appears to be a private doctor with whom PruCare entered into an independent contract relationship to provide treatment to participants.

In sum, while "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan," *id.,* that is not the case here. Types of cases considered "too tenuous, remote, or peripheral" include: a state garnishment of a spouse's pension income to enforce alimony and support orders, *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21 (citing *American Tel. and Tel. Co. v. Merry*, 592 F.2d 118, 121 (2d Cir.1979)); a defamation lawsuit against a plan by a doctor, *Mackey v. Lanier Coll. Agency & Serv., Inc.*, 486 U.S. 825, 833, 108 S.Ct. 2182, 2187, 100 L.Ed.2d 836 (1988) (citing *Abofreka v. Alston Tobacco Co.*, 288 S.C. 122, 341 S.E.2d 622 (1986)); a suit against an ERISA plan for unpaid rent, *Mackey*, 486 U.S. at 833, 108 S.Ct. at 2187 (citing *Morris v. Local 804, Delivery & Warehouse Employees Health & Welfare Fund*, 116 Misc.2d 234, 455 N.Y.S.2d 517 (1982)); or a suit against an ERISA plan for unpaid attorneys' fees, *Mackey*, 486 U.S. at 833, 108 S.Ct. at 2187 (citing *Luxemburg v. Hotel & Restaurant Employees & Bartenders Int'l Union Pension Fund*, 91 Misc.2d 930, 398 N.Y.S.2d 589 (1977)). Or as we speculated in *Pohl v.*

**9.** The Tenth Circuit is the only circuit to have addressed the issue of ERISA preemption of a

vicarious liability claim. The district courts are evenly split. *See Pacificare,* 59 F.3d at 153 n. 2.

*National Benefits Consult., Inc.*, 956 F.2d 126, 128 (7th Cir.1992), a participant who slipped on a banana peel in an plan administrator's office would not be preempted by § 514(a). These cases are all "run-of-the-mill" tort claims. *Mackey*, 486 U.S. at 833, 108 S.Ct. at 2187. None involved a suit by a plan participant against a plan. Nor did they concern allegations of negligence based on a failure to treat where the plan denied benefits for the proposed treatment. They also involve relationships arising from something other than a benefit plan, while here the sole basis for any relationship between PruCare and Jass, PruCare and Anderson, and Anderson and Jass arises solely from the health benefit plan PruCare provided Jass.

### III. Conclusion

Jass' claims against Margulis and PruCare for Margulis' alleged negligence are "completely preempted" and as such are within this court's subject matter jurisdiction. Dismissal of these claims was appropriate because Jass failed to allege claims for which ERISA provides a remedy. Dismissal of the vicarious liability claims against PruCare for Dr. Anderson's alleged negligence was also appropriate because these claims "relate to" the benefit plan and as such are preempted by § 514. However, because we have re-characterized Jass' claim against PruCare as a denial of benefits claim, she should be given the opportunity to amend her complaint to allege appropriate relief under ERISA. For these and the foregoing reasons, we AFFIRM in part and REMAND in part.