# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-2841

JIM KLASSY and BARBRA KLASSY,

*Plaintiffs-Appellants,*

v.

PHYSICIANS PLUS INSURANCE COMPANY
and GARY JOHNSON,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03 C 49—**Barbara B. Crabb**, *Chief Judge.*

_____

ARGUED JANUARY 22, 2004—DECIDED JUNE 15, 2004

_____

Before EASTERBROOK, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* Jim and Barbra Klassy sued Physicians Plus Insurance Company ("Physicians Plus") and Dr. Gary Johnson, alleging numerous claims stemming from Physicians Plus's refusal to approve payment for a bloodless hip surgery for Barbra, who is a practicing Jehovah's Witness. The district court dismissed the Klassys' claims, one for failure to state a claim and the others as being completely preempted by the Employment Retire-

ment Income Security Act of 1974. 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). The district court then gave the Klassys the opportunity to amend their complaint to state a claim under ERISA, but they instead filed this appeal. On appeal, the Klassys challenge only the district court's holding that Barbra's medical malpractice claim against Dr. Gary Johnson is completely preempted by ERISA. We affirm.

I.

At the relevant time, Jim and Barbra Klassy had health insurance with Physicians Plus. The Klassys' insurance plan was an HMO and, as such, the Klassys were required to obtain treatment from a Physicians Plus physician, unless a plan physician was unable to provide the necessary treatment. Accordingly, in 2001, when Barbra began experiencing pain in her hip, she went to a Physicians Plus primary care physician. The primary care physician in turn referred Barbra to Dr. Harvey Barash, an orthopedic surgeon and plan physician. After seeing Dr. Barash, Barbra requested authorization from Physicians Plus for a surgical revision to her hip. This request was passed on to Dr. Gary Johnson, a Physicians Plus medical director. Dr. Johnson reviewed Dr. Barash's notes and concluded that the procedure was not a covered benefit because the need for the surgery had not been "definitely established." Dr. Barash disagreed with Dr. Johnson's findings and wrote him, explaining that Barbra had a compelling need for surgery. There was an added wrinkle: The Klassys are both Jehovah's Witnesses and they believe that the Bible prohibits blood transfusions. Dr. Barash thus noted that he supported authorization of Dr. Carl Nelson to perform the surgery, because he was the only known physician who could perform the procedure in compliance with Barbra Klassy's religious beliefs.

Dr. Johnson refused to authorize payment to Dr. Nelson because Dr. Nelson was an "out-of-network" doctor, but Dr. Johnson agreed to authorize the surgery by a plan physician.[1] However, because no plan physician would agree to perform a "bloodless" surgery, Barbra traveled to Arkansas and paid for the procedure herself. After surgery, Jim and Barbra Klassy filed a complaint against Dr. Johnson and Physicians Plus in Wisconsin state court.

The Klassys alleged in their complaint that Physicians Plus violated Title VII by refusing to accommodate Barbra's religious beliefs, asserting that Physicians Plus should be treated as an employer because it was acting as an agent of Jim's employer. The complaint also alleged six state law claims, including the torts of bad faith, medical malpractice, and negligence, as well as claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and estoppel. The defendants removed the case to federal court. The Klassys then filed a motion to remand their state law claims, contending that the medical malpractice claim raised novel issues of state law. A few weeks later, the defendants filed a motion to dismiss.

The district court denied the Klassys' motion to remand and granted the defendants' motion to dismiss, concluding that Physicians Plus was not an employer for purposes of Title VII and that the state law claims were completely preempted by ERISA. The Klassys appeal. On appeal, the Klassys challenge only the dismissal of their state law malpractice claim against Dr. Johnson.

---

[1] Under the Plan, the Plan was required to pay for out-of-network providers if Plan doctors could not provide "medically indicated" treatments.

## II.

The Klassys argue that the district court erred in concluding that their medical malpractice claim against Dr. Johnson was preempted by ERISA because their claim is a state law claim for medical malpractice. Although the Klassys presented their claim as a state law malpractice claim, if the claim is within the scope of Section 502(a) of ERISA it is completely preempted, no matter how the Klassys have characterized it. *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1488 (7th Cir. 1996). Section 502(a) provides that "a civil action may be brought . . . by a participant or beneficiary—to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1).

This court has set forth three factors for use in determining whether a claim is within the scope of Section 502(a) and thus completely preempted: "[W]hether the plaintiff [is] eligible to bring a claim under that section; whether the plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a); and whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law." *Jass*, 88 F.3d at 1487.

These factors make clear that the Klassys' claim, although framed as a medical malpractice claim, is really a § 502(a) denial of benefits claim. First, as plan participants, the Klassys are eligible to bring a claim under Section 502(a). *See* 29 U.S.C. § 1132(a)(1). Second, the basis of the Klassys' claim is that Dr. Johnson did not approve payment for the bloodless surgery, which concerns her rights "to recover benefits due to [her] under the terms of [her] plan." *Id.* Finally, to determine whether Dr. Johnson was negligent in refusing to approve the out-of-network surgery requires a determination of whether the surgery was covered.

In response, the Klassys cite to the Supreme Court's decision in *Pegram v. Herdrich*, 530 U.S. 211 (2000). In *Pegram*, the Court held that treatment decisions made by an HMO, acting through its physician employees, are not "fiduciary acts" within the meaning of ERISA. In so holding, the Court explained that an HMO's responsibilities with regard to patient care could be divided between "eligibility decisions" and "treatment decisions." However, the Court further explained that most questions of insurance coverage involved "mixed eligibility and treatment decisions" and that in such mixed cases "eligibility decisions cannot be untangled from physicians' judgments about reasonable medical treatment." *Id.* at 229. The Court then held that Congress did not intend HMOs to be treated as fiduciaries under ERISA to the extent they make mixed eligibility and treatment decisions.

Although the Supreme Court in *Pegram* expressly noted that it was not addressing the interaction of § 502(a) and state law claims, *Pegram*, 530 U.S. at 229 n.9, the Klassys posit that the reasoning of *Pegram* applies equally to the question of ERISA preemption. That is, the Klassys maintain that *Pegram* changed the landscape of ERISA preemption, and that post-*Pegram* state law claims based on treatment decisions or mixed eligibility/treatment decisions are not preempted.

The Klassys find support in the Second Circuit's decision in *Cicio v. Does*, 321 F.3d 83 (2d Cir. 2003). *Cicio* involved (among other things) a claim of medical malpractice under state law brought by the widow of a cancer victim against an HMO doctor who denied approval for a stem-cell chemotherapy treatment. The Second Circuit, after summarizing the pre-*Pegram* preemption precedent, stated: "The *Pegram* opinion has further ramifications for our analysis because of its detailed description and analysis of decision-making in the context of health care provisions." *Id.* at 101. The court

in *Cicio* then summarized the *Pegram* discussion of eligibility, treatment, and mixed decisions, after which it reasoned that "*Pegram* thus alters the framework used in [ERISA preemption cases such as] *Jass*, in which a decision must be about either 'treatment' or 'eligibility' and in which any element of benefits determination suffices to make a decision an 'eligibility' decision, that may only be challenged in a § 502(a) action." *Id.* at 102. The Second Circuit then held that where the alleged malpractice of an HMO doctor involves a mixed eligibility and treatment decision, ERISA does not preempt a state law malpractice claim. Several other circuits have also followed *Cicio*'s post-*Pegram* approach. *See, e.g.*, *Roark v. Humana, Inc.*, 307 F.3d 298, 309 (5th Cir. 2002) ("ERISA provides no cause of action for medical malpractice claims against an HMO" and such claims are therefore not preempted by § 502(a)(1)(B)); *Land v. CIGNA Healthcare of Florida*, 339 F.3d 1286 (11th Cir. 2003) (applying *Pegram* approach and holding that the plaintiff's claim that the HMO's failure to diagnose his condition correctly and failure to authorize proper medical treatment do not fall within the civil enforcement provisions of § 502(a) and thus are not completely preempted); *Marks v. Watters*, 322 F.3d 316, 324, 327 (4th Cir. 2003) (reasoning that under *Pegram*, mixed eligibility and treatment decisions are not preempted by § 502(a), but holding that the plaintiff's claim did not involve a treatment decision and was thus preempted); *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 274 (3d Cir. 2001) (citing *Pegram* with approval, but concluding that plaintiff's claims were solely related to the approval of benefits and were thus preempted by § 502(a)).[2]

---

[2] These decisions focused on whether *Pegram* altered the framework for determining if claims were completely preempted by § 502(a). As *Land* recognized, such state law claims may still be subject to conflict preemption under Section 514(a). *See Land*, 339

(continued...)

This circuit has yet to consider the impact of *Pegram* on questions of ERISA preemption, and we need not resolve this issue today because, as discussed below, even under the approach suggested by the Klassys and adopted in *Cicio* and by other courts, the Klassys' claim against Dr. Johnson is preempted by ERISA.

Under the *Cicio* approach, decisions take one of three forms—eligibility, treatment or mixed treatment/eligibility—and ERISA preempts only eligibility decisions, not treatment or mixed treatment/eligibility decisions. In this case, the Klassys' allegations make clear that Dr. Johnson's decision concerned solely the question of eligibility. Here, Dr. Johnson approved surgery for Barbra, but concluded that a bloodless surgery performed by an out-of-network physician would not be covered. Barbra tries to turn that decision into one concerning "treatment," arguing that whether a bloodless surgery is covered concerns the appropriate treatment for her condition. However, contrary to Barbra's position, there is no dispute as to the appropriate *medical* treatment; rather, the Klassys seek alternative treatment based on their religious beliefs. Although we are sensitive to the Klassys' sincerely held religious beliefs, the sole question facing Dr. Johnson was one of eligibility and whether a bloodless surgery performed by an out-of-network physician was covered by the Plan. Therefore, even under the *Cicio* approach, because the sole issue was one of eligibility, Barbra's claim is preempted by ERISA.[3] *See*

---

[2] (...continued)
F.3d at 1294 n.7. For a detailed discussion on the difference between complete and conflict preemption, see *Jass*, 88 F.3d 1482.

[3] To the extent that Dr. Johnson improperly denied coverage of the bloodless hip surgery (as opposed to the traditional hip
(continued...)

*Marks*, 322 F.3d at 327 (holding that the plaintiff's claim was preempted by § 502(a) because the HMO did not make a treatment determination); *Pryzbowski*, 245 F.3d at 274 (holding that the plaintiff's claims, which were "limited to [the HMO's] delay in approving benefits, [was] conduct falling squarely within [the] administrative function" and thus was not preempted by § 502(a)); *Difelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 448 (3d Cir. 2003) (holding that plaintiff's claim that the HMO "interfered with" his medical treatment by declaring treatment "medically unnecessary" was preempted by ERISA because it could have been brought under Section 502(a)).

## III.

ERISA provides a remedy for plan participants wrongfully denied benefits. However, such claims must be brought under ERISA and creatively pleading a denial of benefits claim as a state law claim does not defeat the broad preemptive force of ERISA. Thus, although the Klassys might have succeeded under ERISA and obtained payment for the bloodless surgery, because they instead opted to pursue a state law claim that is preempted, the district court properly dismissed their complaint. For these and the foregoing reasons, we AFFIRM.

---

[3] (...continued) surgery that was approved), the Klassys could have sought reimbursement in an ERISA action. In fact, the district court gave the Klassys an opportunity to amend their complaint to allege an ERISA denial of benefits claim, but the Klassys instead appealed.

No. 03-2841                                                    9

A true Copy:

    Teste:


                  _____
                  *Clerk of the United States Court of*
                  *Appeals for the Seventh Circuit*