LEVISOHN, LERNER, BERGER
& LANGSAM, Plaintiff,

v.

MEDICAL TAPING SYSTEMS, INC.,
Nellcor Puritan Bennett, Inc., Stephen
Solenberger, G. Booker Schmidt, Roland
B. Desilets, Jr., Diane O. Mann, K.C.
Craichy, Monica F. Craichy, Maynard
Ramsey, M.D. and David G. Shell, Defendants.

No. 98 CIV. 0087(WCC).

United States District Court,
S.D. New York.

Sept. 23, 1998.

Levisohn, Lerner, Berger & Langsam, Attorneys for Plaintiff, New York, Marilyn Neiman, Of Counsel.

De Caro & De Caro, Purchase, NY, Philip A. De Caro, Of Counsel, Pullman & Comley, LLC, Bridgeport, CT, William J. Wenzel, John E. Keenan, III, Of Counsel, for Defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Levisohn, Lerner, Berger & Langsam ("LLBL") seeks to recover legal fees allegedly owed to it by defendant Medical Taping Systems, Inc. ("MTS") pursuant to a retainer agreement. In its Amended Answer and Counterclaim, Defendant MTS alleges that the agreement is an invalid non-refundable special retainer or, in the alternative, has been terminated, and seeks recoupment of fees paid in excess of the fair and reasonable value of services actually rendered. Plaintiff moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss MTS's amended counterclaim for failure to state a claim upon which relief can be granted. For the reasons discussed below, Plaintiff's motion is granted in part and denied in part.

### BACKGROUND

In 1994, MTS was a start-up company incorporated for the purpose of manufacturing and selling a certain medical product (the "Product"). In connection therewith, MTS retained LLBL to provide intellectual property legal services and to defend MTS against anticipated litigation with Nellcor, a competitor in the field. MTS and LLBL entered into an agreement on September 13, 1994 which outlined their relationship and provided a payment structure specifically tailored for start-up companies (the "Retainer Agreement"). MTS was to pay LLBL a fixed fee equal to 10% of gross revenues received from sales of the Product and other related products. Payments were to be made on a monthly basis over a five-year period with a total cap of $1.5 million. The Retainer Agreement further provided that, in the event of termination by either party prior to the expiration of the initial five-year term, LLBL would receive a pro-rated percentage of revenues for the remaining months. For example, if the relationship terminated after 30 of the 60 months, LLBL would be entitled to 10% × 30/60 (or 5%) of gross revenues for the remaining 30 months.

Pursuant to this Retainer Agreement, LLBL defended MTS in litigation with Nellcor and received approximately $250,000.00 in legal fees. On May 8, 1997, MTS (without representation by LLBL) entered into a confidential settlement agreement with Nellcor (the "Settlement Agreement"). In exchange for LLBL's cooperation in executing a Consent Judgment, MTS agreed in a letter dated May 21, 1997 to negotiate a fee to LLBL of between 5% and 8% of the settlement amount (the "Letter Agreement").

In the instant action, LLBL alleges that MTS breached the Retainer Agreement and Letter Agreement by refusing to pay LLBL a percentage of the settlement funds. MTS's original Answer contained a breach-of-contract counterclaim which LLBL moved to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The court granted LLBL's motion to dismiss the breach-of-contract counterclaim and granted MTS leave to replead it to cure the defects therein. *See Levisohn, Lerner, Berger & Langsam v. Medical Taping Systems, Inc.*, 10 F.Supp.2d 334, 1998 WL 384887 (S.D.N.Y. June 19, 1998) ("Levisohn I"). MTS filed an Amended Answer, dropping the breach-of-contract counterclaim and alleging instead that the

Retainer Agreement is an improper nonrefundable special retainer or, in the alternative, has been terminated. MTS is seeking recoupment of fees paid in excess of the fair and reasonable value of the services actually rendered by LLBL.

## DISCUSSION

### I. *The Amended Counterclaim Will Be Considered*

■ When the Court granted MTS leave to replead, we suggested that the amended counterclaim "should more specifically state how LLBL allegedly breached the Retainer Agreement and how MTS was damaged by that conduct." *Levisohn I*, 10 F.Supp.2d at 344, 1998 WL 384887, *9. Instead, MTS chose to eliminate the breach-of-contract counterclaim and include a counterclaim based on new legal theories. In its Amended Answer, MTS asserted the following by way of counterclaim:

1. On or about September 13, 1994, Plaintiff and Defendant MTS entered into an agreement whereby Plaintiff would act as attorney to MTS [*i.e.*, the Retainer Agreement].

2. Said Agreement provides that Plaintiff shall receive as compensation a "pro-rated" share for work done prior to discharge and that Plaintiff shall receive a percentage of gross revenues for a period of time after discharge.

3. The Agreement interferes with Defendant MTS' unbridled right to discharge its attorney and as such, constitutes an improper non-refundable special retainer agreement.

4. Plaintiff has been paid approximately $250,000 in fees pursuant to the Agreement.

5. The Agreement is unenforceable under New York law and is violative of public policy.

6. Alternatively, the Agreement has been terminated.

7. Defendant is entitled to return of all amounts paid to Plaintiff in excess of the fair and reasonable value of the services completed by Plaintiff on behalf of MTS.

The amendments to MTS's pleadings clearly fall outside the scope of leave granted by this Court. However, Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend "shall be freely given when justice so requires." *See generally*, 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 15.14 (3d ed.1997). Absent circumstances of abuse, delay or prejudice, courts have been urged to allow parties the opportunity to test their claims on the merits and not to dismiss on the basis of mere technicalities. *See Foman v. Davis*, 371 U.S. 178, 181–182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234–35 (2d Cir.1995) (preference to allow amendment). In keeping with the spirit of the Federal Rules of Civil Procedure, the Court hereby retroactively grants MTS leave to amend its pleadings to include the above counterclaim and related affirmative defenses.

LLBL nevertheless contends that there is no legal or factual basis for MTS's amended counterclaim and requests that it be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

### II. *Legal Standard*

■ A counterclaim should not be dismissed "unless it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). All well-pleaded factual allegations will be accepted as true and all reasonable inferences must be drawn in favor of the claimant. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 1998 WL 455600, *4 (2d Cir. August 6, 1998). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir.1995).

### III. *The Terms of the Retainer Agreement Will Be Considered*

██ In assessing the legal sufficiency of a claim, the Court may consider not only the facts alleged in the pleading at issue, but also any document attached as an exhibit or incorporated by reference. *See* Fed.R.Civ.P. 10(c); *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). The Retainer Agreement was attached to LLBL's Complaint as Exhibit A. It was not attached to MTS's Amended Answer; however, this Court finds that it was incorporated by reference. The Amended Answer contains the following statement:

> Defendant MTS admits that it entered into a contract ("Contract") with Plaintiff, a copy of which is marked as Exhibit "A" to the Complaint. Allegations as to the terms of the Contract are neither admitted nor denied, as the document speaks for itself.

(*See* MTS Amd. Ans. ¶ 23). The Retainer Agreement is also referenced repeatedly in the amended counterclaim. (*See* MTS Amd. Countercl. ¶¶ 1–6). Even if the Retainer Agreement is not explicitly incorporated, MTS's Amended Answer "relies heavily upon its terms and effect; therefore, the Agreement is 'integral' " to the amended counterclaim and we may consider its terms in deciding whether MTS can prove any set of facts that would entitle it to relief. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995). To the extent that MTS's allegations are contradicted by the Retainer Agreement, the Retainer Agreement of course controls. *See Sazerac Co. v. Falk*, 861 F.Supp. 253, 257 (S.D.N.Y. 1994).

The terms of the Letter Agreement will not be considered by this Court because it was neither attached as an exhibit nor incorporated by reference into MTS's Amended Answer and Counterclaim.

### IV. *MTS's Amended Counterclaim*

MTS's amended counterclaim sets forth two somewhat overlapping legal theories: (1) unenforceability of the non-refundable special retainer agreement and (2) premature termination of a non-general retainer agreement. Each of these theories, if established, would entitle the claimant to recoupment of fees paid in excess of the attorneys' quantum meruit entitlement. LLBL contends that MTS can prove no set of facts entitling it to relief under either theory because the Retainer Agreement establishes a general retainer.

██ The determination of this motion turns on the respective definitions of "special", "general" and "nonrefundable" retainer agreements and the differing treatment afforded to each by the New York courts. It should initially be noted that, irrespective of type, retainer agreements are subject to different rules than are traditional commercial contracts because of the fiduciary nature of the attorney-client relationship. *See Campagnola v. Mulholland, Minion & Roe*, 76 N.Y.2d 38, 43, 556 N.Y.S.2d 239, 242, 555 N.E.2d 611 (1990); *Demov, Morris, Levin & Shein v. Glantz*, 53 N.Y.2d 553, 556, 444 N.Y.S.2d 55, 57, 428 N.E.2d 387 (1981). The most important difference is that a client has the implied right to terminate the attorney-client relationship at any time, with or without cause, so that premature termination is not an actionable breach. *See Martin v. Camp*, 219 N.Y. 170, 174, 114 N.E. 46, 48 (1916). This is known as the "Discharge Rule." If the contract provides a set fee for services rendered, an attorney may seek only compensation for the reasonable value of his pre-termination services. *See Martin*, 219 N.Y. at 174, 114 N.E. at 48. However, an attorney is entitled to recover fees in accordance with the terms of the agreement "where the attorney in entering into such a contract has changed his position or incurred expense" or where "an attorney is employed under a general retainer." *Id.*, 219 N.Y. at 176, 114 N.E. at 48.

The *Martin* decision set the stage for two distinct lines of inquiry: (1) are some retainer agreements void per se as violative of the public policy on which the Discharge Rule is based?; and (2) for purposes of breach-of-contract actions or premature termination, which retainers fall within the "general" retainer exception? We will address these questions in that order.

### A. Rescission of Per Se Invalid Nonrefundable Special Retainer

Under New York law, a client has an affirmative cause of action for rescission of an invalid retainer agreement and restitution or recoupment of legal fees paid in excess of the reasonable amount due to the attorney for services actually rendered. *See, e.g., V.W. v. J.B.*, 165 Misc.2d 767, 629 N.Y.S.2d 971 (N.Y.Sup.Ct.1995) (court rescinded "performance fee agreement" in matrimonial action which violated Code of Professional Responsibility and ordered restitution of fee paid less amount earned on basis of quantum meruit). In its counterclaim, MTS seeks similar relief on the ground that the Retainer Agreement at issue is an invalid nonrefundable special retainer agreement.

The per se invalidity of nonrefundable special retainer agreements was first established in *In re Cooperman*, 83 N.Y.2d 465, 471, 611 N.Y.S.2d 465, 467, 633 N.E.2d 1069, 1071 (1994). *In re Cooperman* was a disciplinary proceeding against an attorney whose standard form retainer required a $5,000 to $10,000 payment in advance of services. This fee was expressly designated "non-refundable" without regard to the amount of work performed under the agreement. *Cooperman*, 83 N.Y.2d at 469–70, 611 N.Y.S.2d at 466, 633 N.E.2d at 1070. The Court of Appeals held that these "special nonrefundable retainer fee agreements clash with public policy and transgress provisions of the Code of Professional Responsibility."[1] *Id.*, 83 N.Y.2d at 471, 611 N.Y.S.2d at 467, 633 N.E.2d at 1071. More particularly, the agreements "compromise the client's absolute right to terminate the unique fiduciary attorney-client relationship" because the forfeiture of the non-refundable fee acts as a deterrent or penalty. *Id.* The effect of the *Cooperman* decision was to render nonrefundable special retainer agreements—those "marked by the payment of a nonrefundable fee for specific services, in advance and irrespective of whether any professional services are actually rendered"—void ab initio. *Cooperman*, 83 N.Y.2d at 469, 611 N.Y.S.2d at 466, 633 N.E.2d at 1070. However, the Court was explicit in limiting its holding:

> we intend no effect or disturbance with respect to other types of appropriate and ethical fee agreements (see Brickman and Cunningham, Nonrefundable Retainers Revisited, 72 N.C.L.Rev. 1, 6 [1993]). Minimum fee arrangements and general retainers that provide for fees, not laden with the nonrefundability impediment irrespective of services, will continue to be valid.

*Cooperman*, 83 N.Y.2d at 476, 611 N.Y.S.2d at 470, 633 N.E.2d at 1074.

In order to understand the precise boundaries of the *Cooperman* decision, we must specifically define the terms "special", "general" and "nonrefundable." For the purposes of this motion, we will use the definitions espoused by Profs. Lester Brickman and Lawrence A. Cunningham, authors of *Nonrefundable Retainers Revisited*, 72 N.C.L.Rev. 1 (1993) ("Brickman I") and *Nonrefundable Retainers: A Response to Critics of the Absolute Ban*, 64 U.Cin.L.Rev. 11 (1995) ("Brickman II"). *Nonrefundable Retainers Revisited* is the leading article on this topic and was expressly relied upon by the *Cooperman* Court.[2]

> The relevant terms are defined as follows:
>
> nonrefundable retainer—a fee paid by a client in advance of services and denominated by the lawyer as nonrefundable, irrespective of whether the client discontinues the representation or whether the lawyer does any work. Brickman I, 72 N.C.L.Rev. at 3.
>
> special retainer—an agreement between attorney and client in which the client

---

**1.** The Code of Professional Responsibility provisions cited by the court state that an attorney "shall not enter into an agreement for, charge, or collect an illegal or excessive fee" (DR 2–106[A]) and upon withdrawal from employment "shall refund promptly any part of a fee paid in advance that has not been earned." (DR 2–110[A][3]).

**2.** Indeed, Profs. Brickman and Cunningham assert that the Court unequivocally adopted the analysis set forth in their extensive amicus brief. See Brickman II (analyzing Court of Appeals decision).

agrees to pay the attorney a specified fee in exchange for specified services to be rendered. The fee may be calculated on an hourly, percentage or other basis and may be payable either in advance or as billed. Brickman I, 72 N.C.L.Rev. at 6. general retainer—agreement between attorney and client in which the client agrees to pay a fixed sum to the attorney in exchange for the attorney's promise to be available to perform, at an agreed price, any legal services (which may be of any kind or of a specified kind) that arise during a specified period. Because the general retainer fee is given in exchange for availability, it is a charge separate from fees incurred for services actually rendered. In other words, such fees are "earned when paid" because the payment is made for availability. *Id.*

Subsequent cases have narrowly construed the holding in *Cooperman*, declaring only those retainers with express nonrefundability language invalid per se. *See, e.g., Wong v. Michael Kennedy, P.C.,* 853 F.Supp. 73 (E.D.N.Y.1994) (agreement expressly said fee was not refundable); *Gala Enterprises, Inc. v. Hewlett Packard Co.,* 970 F.Supp. 212 (S.D.N.Y.1997) (agreement held not to be nonrefundable special retainer because it made no express reference to refundability of fee).

MTS seeks rescission of the Retainer Agreement on the ground that it is a per se invalid nonrefundable special retainer. (MTS Amd. Countercl. ¶ 3). However, to the extent that MTS's allegations are contradicted by the Retainer Agreement, the Retainer Agreement controls. *See Sazerac,* 861 F.Supp. at 257.

The relevant sections of the Retainer Agreement provide:

[LLBL] will render services for a fixed fee for the first five years of our relationship, unless sooner terminated. The fixed fee will be ten percent (10%) of gross revenues received by MTS for the five year period beginning when first revenues are received by MTS for sales of the Product. [Gross revenues are further defined].

The 10% fixed fee relationship shall apply for said five year period, and payments shall be made to [LLBL] within fifteen (15) days of the last day of each month with accompanying financial reports. [Provides for a cap of $1.5 million over five year period].

Either party must be free to terminate its relationship with the other, and if the relationship is terminated by either party within the five year term of the 10% fixed fee as stated above, [LLBL] shall receive a pro rata proportion of the 10% which was earned as a consequence of performing services for whatever number of months the relationship between [LLBL] and MTS existed. For instance, if the [LLBL] representation of the MTS terminates in the forty fifth month of its representation of MTS, [LLBL] shall receive 45/60 (75%) [3] of the gross revenues for the remaining 15 months of the initial five year term. Prior to the time of termination, [LLBL] shall receive the 10% of gross revenues, but if there is a termination of the relationship between the parties hereto, the ongoing proportion of gross revenues paid to [LLBL] shall be diminished pro rata by the number of months less than the sixty (60) month term of the fixed fee arrangement herein.

...Attorneys' time from the firm of [LLBL] shall be paid in accordance with the above-identified fixed fee relationship.

Here, as in *Gala Enterprises,* there is no reference to the refundability of any payment made under the agreement. The Retainer Agreement "does not purport to limit [MTS's] ability to obtain a refund" if the amount paid by MTS exceeds the reasonable value of LLBL's services rendered at the point of termination. *Gala Enterprises,* 970 F.Supp. at 219. LLBL's motion to dismiss is therefore granted with respect to the rescission remedy sought in its counterclaim because the Retainer Agreement is not a per se invalid nonrefundable special retainer agreement.

---

**3.** It is clear from the text of the agreement that the proper post-termination percentage in the above example should be 10% × 45/60 or 7.5% (not 75%) of gross revenues.

### B. *Premature Termination of Non–General Retainer Agreement*

■ New York courts have consistently held that when a client prematurely discharges an attorney retained under an agreement other than a general retainer, the attorney may not sue for breach of contract, and is limited to recovery under quantum meruit. *See Martin*, 219 N.Y. 170, 114 N.E. 46 (special retainer, contingency fee arrangement); *Gonzalez y Barredo v. Schenck*, 428 F.2d 971 (2d Cir.1970) (attorney not entitled to contingency fee when client discharged immediately prior to settlement); *In re Montgomery's Estate*, 272 N.Y. 323, 6 N.E.2d 40 (1936) ("contract for a definite purpose" as opposed to general retainer); *Sae Hwan Kim v. M & Y Gourmet Grocers, Inc.*, 239 A.D.2d 170, 657 N.Y.S.2d 167 (1st Dep't 1997) (special retainer providing hourly rate of compensation in event of attorney's discharge unenforceable).

■ If a client has made payments over and above the amount to which the attorneys are entitled under quantum meruit, the client may seek affirmative relief by asserting a recoupment counterclaim. *See Krimsky v. Lombardi*, 78 Misc.2d 685, 357 N.Y.S.2d 671 (Sup.Ct.1974) (recognizing counterclaim seeking recoupment of fees paid but denying relief on estoppel grounds). In its alternative counterclaim theory, MTS seeks recoupment of fees paid in excess of LLBL's quantum meruit entitlement, alleging that:

1. On or about September 13, 1994, Plaintiff and Defendant MTS entered into an agreement whereby Plaintiff would act as attorney to MTS [*i.e.*, the Retainer Agreement].

\*   \*   \*   \*   \*   \*

4. Plaintiff has been paid approximately $250,000 in fees pursuant to the Agreement.

\*   \*   \*   \*   \*   \*

6. ...[T]he Agreement has been terminated

7. Defendant is entitled to return of all amounts paid to Plaintiff in excess of the fair and reasonable value of the services completed by Plaintiff on behalf of MTS.

LLBL contends that MTS can prove no set of facts entitling it to such relief because the Retainer Agreement is a general retainer and thus not subject to the quantum meruit recovery rule.

The so-called "general retainer exception" originally established in *Martin* has consistently been reaffirmed by the courts. *See Greenberg v. Jerome H. Remick & Co.*, 230 N.Y. 70, 129 N.E. 211 (1920) (attorney discharged under general retainer is entitled to full contract price); *Montgomery's Estate*, 272 N.Y. 323, 6 N.E.2d 40; *Roth v. Rural Const. Corp.*, 122 N.Y.S.2d 147 (N.Y.Cty. 1953); *Luxemburg v. Hotel & Restaurant Employees & Bartenders Int'l Union Pension Fund*, 91 Misc.2d 930, 398 N.Y.S.2d 589 (Sup.Ct.1977); *Kelly v. MD Buyline, Inc.*, 2 F.Supp.2d 420 (S.D.N.Y.1998).

■ The rule regarding general retainers, however, is really not an "exception" to the Discharge Rule. *See* Brickman I, 72 N.C.L.Rev. at 9; Brickman II, 64 U.Cin.L.Rev. at 20. A client still has an unfettered right to discharge his attorney without penalty. An attorney discharged under a general retainer may nevertheless recover the contract price because the general retainer fee was "earned when paid" and therefore not a penalty or loss to the client. *Id.* This "earned when paid" theory is based on the fact that a general retainer fee (in its pure sense [4]) is paid solely in exchange for the attorney's availability—i.e. at the time of accepting a retainer agreement, the attorney must forgo other employment opportunities in order to remain personally available to the client throughout the term of the agreement. *See* Brickman I, 72 N.C.L.Rev. at 9, 23; Brickman II, 64 U.Cin.L.Rev. at 20–21.

LLBL cites *Greenberg* and its progeny in support of its contention that the Retainer

---

4. A "pure" general retainer refers to the Brickman definition of "general retainer": "Because the general retainer fee is given in exchange for availability, *it is a charge separate from fees incurred for services actually rendered*" as distinguished from a "general-special hybrid agreement" where the parties agree that "part or all of the general retainer fee [will] be applied to the bill for any services actually performed." *See* Brickman I, 72 N.C.L.Rev. at 6 (emphasis added).

Agreement is a general retainer. It appears, however, that LLBL's reliance on these cases is misplaced. In the lead case of *Greenberg v. Jerome H. Remick & Co.*, 230 N.Y. 70, 129 N.E. 211 (1920), the court was presented with an agreement which clearly fell within the ·"change of position" language in *Martin*, rather than a general retainer.[5] The attorney suing for contract damages was employed essentially as in-house counsel for the defendant. *See Greenberg*, 230 N.Y. at 75, 129 N.E. at 212–13. He worked solely for the defendant, in the offices of the defendant, and thus changed his position to his detriment as does any employee under an ordinary "employment at will" contract. *See id.* Indeed, in support of its decision to award contract damages, the court relied solely upon cases involving traditional employment agreements. *See Greenberg*, 230 N.Y. at 75–6, 129 N.E. at 213. The Retainer Agreement here is clearly distinguishable from the agreement in *Greenberg*. In fact, it more closely resembles the category · of agreements that the *Greenberg* court deemed to be non-general in nature—i.e. contracts "entered into in anticipation of expected litigation." *Greenberg*, 230 N.Y. at 75, 129 N.E. at 212.

In *Roth*, 122 N.Y.S.2d at 148, the court expanded the holding in *Greenberg* to apply to an attorney retained under a one-year retainer agreement but free to carry on his practice in his own office. The court held that "[t]he fixed contractual obligation supersedes the ad hoc attorney-client relationship and limits the power of the client to discharge." *Id.* Not only does this holding directly contradict the Court of Appeals decision in *Martin*, but the sole case cited in support of this proposition involved a personal representative and manager suing for a commission under a commercial employment agreement. *See id.* (citing *Mandel v. Liebman*, 303 N.Y. 88, 100 N.E.2d 149).

Other cases have similarly relied on *Greenberg* to allow contract recovery when an attorney was retained for a fixed fee to perform any and all services that may arise during a contract period. *See, e.g., Hotchner v. Barrymore*, 31 F.Supp. 928 (E.D.N.Y. 1940); *Luxemburg*, 91 Misc.2d 930, 398 N.Y.S.2d 589. In neither case does the court suggest that the fee was paid solely for availability and not in payment for services rendered. Rather, they simply analogize the allegedly general retainers to ordinary commercial contracts. *See Luxemburg*, 91 Misc.2d at 933, 398 N.Y.S.2d at 590 ("An agreement of general retainer for a fixed period is like any other contract and on its breach the attorney is not limited to quantum meruit but may sue for the contract sum").

*Alpern v. Hurwitz*, 644 F.2d 943 (2d Cir. 1981), upon which LLBL relies, involves a financial consultant employment contract, not an attorney retainer agreement, and therefore is of no consequence here.

The Court thus believes it must look to the most recent pronouncement of the Court of Appeals in this area, *In re Cooperman*, to determine what should properly be considered a "general" retainer for purposes of the quantum meruit "exception." In announcing that the Court intended "no effect or disturbance with respect to other types of appropriate and ethical fee agreements", 83 N.Y.2d at 476, 611 N.Y.S.2d at 470, 633 N.E.2d at 1074, the Court of Appeals cited Brickman I, 72 N.C.L.Rev. at 6 which contains the following definition of "general" retainer:

. an agreement between attorney and client in which the client agrees to pay a fixed sum to the attorney in exchange for the attorney's promise to be available to perform, at an agreed price, any legal services (which may be of any kind or of a specified kind) that arise during a specified period. Because the general retainer fee is given in exchange for availability, it is a charge separate from fees incurred for services actually rendered. In other words, such fees are "earned when paid" because the payment is made for availability.

. The court then continued, "Minimum fee arrangements and general retainers not laden with the nonrefundability impediment irre-

---

**5.** *Martin* noted an exception to quantum meruit recovery "where the attorney in entering into such a contract has changed his position or incurred expense" or where "an attorney is employed under a general retainer." 219 N.Y. at 176, 114 N.E. at 48.

spective of any services, will continue to be valid." *Id.*

The Retainer Agreement at issue does appear to obligate LLBL contractually to perform a broad range of legal services during the term of the agreement. However, it is repeatedly stated throughout the agreement that the fixed fee is in payment of services rendered: "[LLBL] will render services for a fixed fee...The fixed fee will be ten percent (10%) of gross revenues...if the relationship is terminated by either party...[LLBL] shall receive a pro rata proportion of the 10% which was earned as a consequence of performing services."

■ The Retainer Agreement makes absolutely no reference to a separate fee in exchange for availability, separate and apart from the fee charged for services. The assertions to this effect contained in Plaintiff's Reply Memorandum of Law will not be considered here because such memoranda do not constitute pleadings under Rule 7(a). See 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 12.34[2] at 12–67 (3d ed.1997). The Retainer Agreement is therefore not a "general" retainer within the meaning of the quantum meruit "exception." Further, the fact that LLBL apparently deems all payments under the Retainer Agreement to be earned when paid, "does not convert the Retainer Agreement into a general retainer." *Wong,* 853 F.Supp. at 81.

The Retainer Agreement could be deemed to be a "general-special hybrid retainer" defined as one where "part or all of the general retainer fee [will] be applied to the bill for any services actually rendered." Brickman I, 72 N.C.L.Rev. at 6. In their analysis of the *Cooperman* decision, Profs. Brickman and Cunningham state their belief that the Court regards "the hybrid as a special retainer for purposes of the client discharge rule." Brickman II, 64 U.Cin.L.Rev. at 23. They go on to assert that in substantially all hybrid retainer situations, "the advance fee will be intended as prepayment for actual services to be rendered rather than for the availability that is the essence of a general retainer." *Id.*

Three recent District Court opinions have analyzed retainer agreements which are no-

tably similar to the Retainer Agreement at issue and appear to be in agreement with this Court's analysis. In *Gala Enterprises Inc. v. Hewlett Packard Co.,* 970 F.Supp. 212 (S.D.N.Y.1997), the court held that an agreement which (1) described the scope of representation as covering any and all matters relating to the transactions between the client and a competitor, including all corporate, civil and criminal matters; (2) provided for a $500,000 fixed fee for legal services; and (3) provided for the availability of certain identified law partners, was neither a nonrefundable special retainer agreement nor a general retainer agreement.

In *Provanzano v. Nat'l Auto Credit, Inc.,* 1998 WL 300583, No. 95–CV12370–RGS (D.Mass. June 4, 1998), the agreement provided for (1) exclusive representation by an attorney with respect to all civil and criminal matters filed by or brought against the client; (2) a fixed fee to be paid in monthly installments throughout the initial five-year term, later changed to a contingency fee; and (3) the attorney's responsibility to forgo conflicting representation, with an additional fee in the event that he must hire additional counsel to work on such matters. The agreement was held not to constitute a general retainer entitling the attorney to contract damages.

Finally, *Kelly v. MD Buyline, Inc.,* 2 F.Supp.2d 420 (S.D.N.Y.1998), was a breach-of-contract suit brought by the attorney, John Quinlan Kelly, seeking damages from a client under an alleged general retainer agreement. The defendant moved to dismiss the claim on the ground that the agreement was a nonrefundable special retainer agreement. The court denied the defendant's motion to dismiss, adopting the Magistrate's findings that: (1) the agreement was a general retainer and the *Cooperman* decision did not preclude the use of nonrefundability provisions in general retainers; or (2) in the alternative, "Kelly's retainer provided for monthly fees, which apparently were intended to compensate both for availability and for services rendered, and thus comes within the so-called hybrid category"; and therefore (3) Kelly would be entitled to some relief under a contract damages theory with respect to

that portion of the fee that was in fact paid to ensure availability. *Kelly,* 2 F.Supp.2d at 446–51.

It should be noted that the burden is on the movant, LLBL, to prove beyond doubt that no claim has been stated. *Padavan,* 82 F.3d at 26 (quoting *Hughes,* 449 U.S. at 10, 101 S.Ct. 173). LLBL has failed to establish beyond doubt that the Retainer Agreement is a general retainer.

C. *Payment in Excess of Fair and Reasonable Value of Services Already Rendered*

 LLBL also asserts that the recoupment claim must fail because it is clear from the face of the Retainer Agreement that all fees paid thereunder are for services already rendered. (*See* Pl.'s Reply Mem. at 8.) The Retainer Agreement does state that post-termination payments were "earned as a consequence of performing services for whatever number of months the relationship ... existed;" however, payments have not *in fact* been earned just because a retainer deems them to have been earned. *See Wong,* 853 F.Supp. at 81. Further, all pre-termination payments are calculated as a percentage of MTS's gross revenues. MTS is required to submit financial reports with each monthly payment to ensure the accuracy of the payment. The Retainer Agreement does not set forth the manner in which the monthly payments are to be applied against charges for services rendered. No hourly rate for services or schedule of fees is set forth. Indeed, the Retainer Agreement does not obligate LLBL to provide MTS with an accounting of time spent or services performed on behalf of MTS, and apparently LLBL rendered no such statements. Nothing on the face of the Retainer Agreement therefore contradicts MTS's assertion that payments made to date exceed the fair and reasonable value of services rendered prior to termination. Accordingly, the motion to dismiss the counterclaim seeking recoupment upon premature termination is denied.

If LLBL believes that the Amended Counterclaim does not contain sufficient information to allow for preparation of a response (i.e. exact date of alleged termination) its proper remedy is a motion for a more definite statement under Rule 12(e), *TWEEN-DECK V K/S v. United States Int'l Imports, Inc.,* 1992 WL 42218, *2 (S.D.N.Y.1992), or use of traditional discovery devices.

### CONCLUSION

For the reasons discussed above, LLBL's motion to dismiss MTS's amended counterclaim pursuant to Rule 12(b)(6) is granted in part and denied in part. The motion is granted insofar as it concerns the claim for rescission on the ground that the Retainer Agreement is an invalid nonrefundable special retainer agreement. The motion is denied insofar as it concerns the claim for recoupment based on the premature termination of a non-general retainer agreement. SO ORDERED.