**In re PREMIER OPERATIONS,**
**Debtor–in–Possession.**

**NOVA Information Systems,**
**Inc., Appellant**

v.

**Premier Operations, Ltd., Appellee.**

No. 02 CIV.6997.

United States District Court,
S.D. New York.

March 7, 2003.

Toni Marie McPhillips, Duane Morris LLP, New York City, for NOVA Information Systems, Inc.

Ken Coleman, Allen & Overy, New York City, for Premier Operations, Ltd.

### DECISION AND ORDER

MARRERO, District Judge.

Appellant NOVA Information System Inc. ("NOVA") appealed to this Court pursuant to 28 U.S.C. § 158(a) or (b) from an order (the "Reclassification Order") of the Bankruptcy Court (the "Bankruptcy Court") sustaining an objection by appellee Premier Operations, Ltd. ("Premier") to NOVA's amended proof of claim (the "Amended Claim"). The Reclassification Order reclassified NOVA's Amended Claim as a general unsecured claim in Premier's bankruptcy proceeding. Premier moves here for an order pursuant to 28 U.S.C. § 158(a)(3) and Federal Rules of Bankruptcy Procedure 8001(b), 8002(a) and 8003(a) dismissing NOVA's appeal (the "Motion"). For the reasons set forth below the Motion is DENIED.

## I. FACTS

The Motion arises out of Premier's bankruptcy proceedings. Premier, a Bermuda corporation, was engaged in operating cruise ships. NOVA, under agreements with Premier, processed the credit card charges of Premier customers. In September 2000, Premier initiated a proceeding in Bermuda to wind up its business following the seizure of one of its ships by a secured creditor. Pursuant to that petition, the Bermuda court-appointed joint liquidators filed an involuntary petition against Premier in this District on September 2000 pursuant to § 303(b)(4) of the Bankruptcy Code. The proceeding was later converted into a case under Chapter 11 of the Bankruptcy Code and the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in May 2001.

By Order entered on December 20, 2001, the Bankruptcy Court established a deadline of January 25, 2002 (the "Claims Bar Date") by which Premier's creditors could file written proofs of claims. In accordance with this schedule, NOVA filed a claim (Claim No. 423) on January 24, 2002 (the "Original Claim") asserting an amount owed by Premier to NOVA. The debt arose out of services NOVA performed for Premier in processing payment by Premier passengers, specifically relating to losses NOVA allegedly incurred as a result of actions by approximately 19,000 Premier customers who, in the wake of Premier's bankruptcy, chose to obtain credits for prepaid cancelled cruises. These credits were approved as chargebacks to customers by the credit card companies by which the fares had been paid, leaving NOVA out of pocket for payments it presumably had advanced to Premier on behalf of some of these passengers. NOVA alleged that these customers and their credit card banks had contractually assigned to NOVA all of their rights to

recover their payments from Premier, and thus NOVA sought to enforce these claims against Premier in the bankruptcy proceeding. According to Premier, NOVA's Original Claim did not assert entitlement to priority under § 507 of the Bankruptcy Code (" § 507") and indicated as the legal basis for the claim an executory contract between NOVA and Premier.

On May 21, 2002 NOVA amended its Original Claim by filing proof of claim (Claim No. 535) (the "Amended Claim") asserting a secured claim in the amount of $260,498.10 and unsecured claim of $9,707,826.90, of which NOVA stated $6,360,505 was entitled to priority status pursuant to § 507. Premier objected to NOVA's Amended Claim on the ground that NOVA was not an assignee, but rather a subrogee of the Premier customers' claims, and consequently, pursuant to § 507(d),[1] precluded from asserting priority on any portion of its unsecured claim. Premier states that it reserved the right to object to the Amended Claim on other grounds, including its having been filed after the Claims Bar Date. The bankruptcy court sustained Premier's objection by Order dated July 31, 2002 and entered the Reclassification Order reclassifying the Amended Claim as an unsecured non-priority claim.

NOVA then filed a Notice of Appeal (the "Notice of Appeal") with the Clerk of the bankruptcy court on August 12, 2002 stating that it was appealing from an order entered on August 7, 2002 (the "August 7 Order") in an adversary proceeding between the parties. The August 7 Order is not the Reclassification Order and in fact no such adversary proceeding between the parties existed within Premier's Chapter 11 bankruptcy. Rather, the August 7 Order referred to a stipulation agreed by the parties to settle an unrelated claim and was entered as "So Ordered" by the bankruptcy court on that date. NOVA asserts that, as prepared, the August 12 Notice of Appeal inadvertently referred to the incorrect order and that the document was filed with the bankruptcy court in error. Nonetheless, the bankruptcy court's docket sheet pertaining to this matter records the entry of NOVA's Notice of Appeal as relating to the document (No. 192), which corresponds to the Reclassification Order entered on July 31, 2002.

On August 22, 2002, NOVA filed an amended notice of appeal (the "Amended Notice of Appeal") appealing from the Reclassification Order and referring to the proper document in the bankruptcy proceeding.

Premier's instant motion seeks dismissal of NOVA's appeal on three grounds, that: (1) NOVA's Amended Notice of Appeal was not timely filed in this Court, thus barring this Court from exercising jurisdiction to review the appeal or treating the Amended Notice of Appeal as a motion for leave to appeal pursuant to Bankruptcy Rule 8003(3); (2) even if its Notice of Appeal were found timely, NOVA failed to file an accompanying motion for leave to appeal pursuant to 28 U.S.C. § 158(a)(3) and Bankruptcy Rule 8001(b), a procedure that was required because, according to Premier, the Reclassification Order is not a final order, but an interlocutory order; and (3) even if NOVA had requested leave to appeal, it would not be able to satisfy the criteria this Court applies in determining whether to grant an appeal from an

---

**1.** Section 507(d) provides in pertinent part that: "[a]n entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection...(a)(6)... of this section is not subrogated to the right of the holder of such claim to priority under such subsection." 11 U.S.C. § 507(d).

interlocutory decision of the Bankruptcy Court.

## II. *DISCUSSION*

A district court's jurisdiction to review appeals from bankruptcy court orders is governed by 28 U.S.C. § 158(a), which provides in relevant part:

> The district courts ... shall have jurisdiction to hear appeals (1) from final judgments, orders and decrees; ... and, with leave of the court from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.

28 U.S.C. § 158(a).

■ Bankruptcy Rule 8002(a) requires that a notice of appeals "shall be filed with the [Bankruptcy Court] clerk within 10 days of the date of the entry of the judgment, order or decree appealed from." Fed. R. Bankr.P. 8002(a). This ten-day period of limitations is jurisdictional; failure to file a timely notice of appeal deprives the district court of jurisdiction to review the bankruptcy court's orders. *See In re Taylor*, No. 98 Civ. 9205, 1999 WL 777955, at *3, 1999 U.S. Dist. LEXIS 15064, at *9 (S.D.N.Y. Sept. 29, 1999) (citing *In re New York Int'l Hostel, Inc.*, 194 B.R. 313, 316 (S.D.N.Y.1996) and *In re Vega*, No. 93 Civ. 0083, 1995 WL 254368, at *1 (S.D.N.Y. May 1, 1995)).

### A. *TIMELINESS*

■ Premier argues that NOVA's instant appeal is untimely because the Notice of Appeal filed on August 12, 2002, the last day of the limitations period, was deficient insofar as it referenced the August 7 Order in a non-existent adversary proceeding rather than the Reclassification Order. Moreover, according to Premier, the Amended Notice of Appeal filed on August 22, 2002—ten days after the deadline—

could not be construed to relate back to the original Notice of Appeal because that filing did not properly refer to the Reclassification Order. In support of its contention, Premier relies upon *In re Taylor* and *In re Vega*. The Court is not persuaded that those cases are apposite to the particular circumstances at hand.

*Taylor* entailed two notices of appeal, one seeking appellate review of a Settlement Order and the other an Exemption Order, entered by the Bankruptcy Court on September 17 and September 29, respectively. The appellant filed the first notice of appeal on September 21, purporting to appeal from the Settlement Order. But the appeal was incorrectly captioned, erroneously filed in a wrong adversary proceeding rather than the bankruptcy case there at issue, and made no mention of the Exemption Order. *See In re Taylor*, 1999 WL 777955, at *1–*2, 1998 U.S. Dist. LEXIS 15064, at *3–*5. Subsequently, on October 13, the appellant filed an amended notice of appeal purporting to appeal both the Settlement Order and the Exemption Order. This notice was also incorrectly captioned and docketed in the wrong proceeding. On November 17, the appellant filed a second amended notice correctly citing the proper orders and docketed in the bankruptcy proceeding.

In the appeal, the district court ruled that the September 21 notice of appeal was deficient in that it was miscaptioned and entered in the wrong case, and that the October 13 amended notice seeking to appeal from the Exemption Order was similarly deficient and untimely because it could not be construed to relate back to the September 21 notice because that original filing made no reference to the Exemption Order. *See id.*, 1999 WL 777955, at *4, 1998 U.S. Dist. LEXIS 15064, at *12. For these reasons, the district court found the second amended notice of appeal

insufficient to correct the errors contained in the prior deficient filings. *See id.,* 1999 WL 777955, at *4, 1998 U.S. Dist. LEXIS 15064, at *13.

*Taylor* is distinguishable from the instant case in several ways. First, there is no indication there that, though original and amended notices were filed in the wrong case, there was nonetheless an entry in the bankruptcy proceeding's docket, as occurred here, evidencing some official record of an attempt by the appellant to file the notice in the proper proceeding, even if ultimately entered in the wrong action, as was the case with regard to the entry in the bankruptcy court's docket of NOVA's Notice of Appeal referencing the July 31, 2002 Reclassification Order. Thus, even if NOVA's original notice itself was incorrectly worded, the bankruptcy court's official record contained sufficient information to put Premier on notice of the error.

Second, the error in question in *Taylor* persisted, as the district court noted, for 53 days after the deadline for filing the notice of appeal, hence compounding the potential prejudice and other effects of the error, while here NOVA corrected its obvious mistake with a proper notice 10 days after the deadline. Third, this Court notes that one of the reasons for which the *Taylor* court found the original notice of appeal filed on September 21 deficient was that it made no mention of the Exemption Order, and thus could not be considered an appeal from that Order. For the same reasons, the district court found that while the amended notice of appeal, filed four days after the deadline had expired, did purport to appeal from the Exemption Order, it could not be construed to relate back to the original notice because that filing made no reference to the Exemption Order. The Exemption Order, however, had been entered by the bankruptcy court

on September 29. Therefore, the appellant could not have been faulted for not mentioning the Exemption Order in the original notice of appeal filed eight days earlier on September 21.

The Court finds *In re Vega* also distinguishable because the notice of appeal there was clearly untimely when filed and there was no record evincing any effort by the appellant to file a timely notice that, as occurred here, was not recorded or incorrectly docketed because of inadvertent error. *See In re Vega,* 1995 WL 254368, at *1–2.

For the foregoing reasons, the Court finds that the Amended Notice filed here clearly manifests that NOVA took timely steps to give sufficient notice of the filing of an appeal. Consistent with this finding, several courts that have examined the issue have adopted a similarly flexible and practical approach to construing the content of a notice of appeal filed pursuant to the Bankruptcy Rules. *See In re Cascade Roads, Inc.,* 34 F.3d 756, 761 (9th Cir.1994) (holding that Bankruptcy Rule 8001(a) "does not require that notices of appeal to the district court 'designate the judgment, order or part thereof appealed from.' Rather, the bankruptcy rule requires only that a 'notice contain the names of all parties to the judgment, order, or decree appealed from.'") (quoting Bankruptcy Rule 8001(a)); *In re White,* 183 B.R. 356, 357 n. 1 (D.Conn.1995) ("While [the plaintiff] did not properly designate the judgment or order from which he appealed, this flaw in his notice of appeal is not fatal to his appeal."). The technicalities of noncompliance here are not sufficiently serious to be considered fatal because the Court finds that "no genuine doubt exists about who is appealing, from what judgment, to which appellate court." *Becker v. Montgomery,* 532 U.S. 757, 759, 121 S.Ct. 1801, 149 L.Ed.2d 983 (2001); *see also*

*Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 106 (2d Cir.1998) (noting in the context of the Federal Rules of Appellate Procedure that the Second Circuit liberally construes the requirement regarding the designation of the specific judgment from which appeal is taken).

On the record before this Court, there is no evidence that NOVA's missteps reflected any bad faith or that Premier was in any way misled or unduly prejudiced by the error. *See, e.g., Ametex Fabrics,* 140 F.3d at 106 (noting that if intent to appeal from a specific judgment can be fairly inferred, or even if it cannot be inferred but the appellee has not been prejudiced by an inaccuracy in designating the proper order sought to be appealed, the court has jurisdiction to hear the appeal) (internal quotation marks and citations omitted). In fact, as NOVA points out and Premier acknowledges, Premier actually understood NOVA's original Notice of Appeal as an appeal of the Reclassification Order. Shortly after NOVA's original notice was filed, Premier issued a Disclosure Statement in which it noted that on August 12, 2002 NOVA had filed a notice of appeal from the Reclassification Order.[2]

Accordingly, the Court rejects Premier's argument that the Court lacks jurisdiction to consider NOVA's appeal on the ground that the Notice of Appeal was untimely filed.

## B. *INTERLOCUTORY ORDER*

Premier next contends that the appeal should be dismissed because the Reclassification Order is not a final determination by the bankruptcy court for the purposes of § 158(a), but an interlocutory order, and that NOVA failed to file a motion for leave to appeal an interlocutory order as required by Bankruptcy Rules 8001(b) and 8003(c)[3]. As grounds for its position, Premier points out[4] that the Amended Claim was filed after the Claims Bar Date and purports to alter the nature of the claim from unsecured to priority status, potentially giving rise to a substantively new claim. (Premier Reply at 4 (citing *In re Alliance Operating Corp.,* 60 F.3d 1174 (5th Cir.1995); *In re Walls & All, Inc.,* 127 B.R. 115 (W.D.Pa.1991); and *In re Metro Transport. Co.,* 117 B.R. 143 (Bankr. E.D.Pa.1990).))

Premier also indicates that in its objection to NOVA's claim to priority status, it reserved its rights to contest the Amended Claim on these and any other ground as well. Moreover, Premier asserts that the

2. *See* Disclosure Statement for Plan of Liquidation of Premier Operations Ltd. Under Chapter 11 of the Bankruptcy Code, attached as Exhibit A to Memorandum of Law of NOVA Information Systems, Inc. In Opposition to Premier Operations, Ltd.'s Motion to Dismiss Appeal (sic) NOVA Information Systems, Inc.'s Appeal Under 28 U.S.C. § 158(a) or (b) from the Bankruptcy Court's July 31, 2002, Order Sustaining Premier's Objection to the Claim of NOVA Information Systems, Inc. (Claim No. 535) and Reclassifying the Claim as a General Unsecured Claim, dated October 4, 2002 ("NOVA Mem.").

3. Bankruptcy Rule 8003(c) provides:
   If a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district court...may grant leave to appeal or direct that a motion for leave to appeal be filed. The district court ... may also deny leave to appeal but in so doing shall consider the notice of appeal as a motion for leave to appeal.
   Fed. R. Bankr.P. 8003(c).

4. *See* Premier's Reply to NOVA Information Systems Inc.'s Response to Premier's Motion to Dismiss NOVA Information Systems Inc.'s Appeal from the Bankruptcy Court's July 31, 2002 Order Sustaining Premier's Objection to the Claim of NOVA Information Systems, Inc. (Claim No. 535) and Reclassifying the Claim as a General Unsecured Claim, dated October 9, 2002 ("Premier Reply"), at 3–4.

Committee has served notice of its objection to NOVA's Amended Claim allegedly because the claim does not relate back to the Original Claim. (*Id.*) NOVA counters that the Reclassification Order determined the priority status of NOVA's claim and was thus in and of itself a final order appealable as of right pursuant to § 158(a).[5]

■ The parties' sharp differences over the finality of the Reclassification Order derives from a basic procedural departure unique to bankruptcy proceedings and unlike the established practices and policy goals generally prevailing in other civil litigation. A fundamental doctrine embedded in federal procedures governing civil actions discourages piecemeal appeals and permits appeals only from final orders or decisions of the lower courts. *See, e.g.,* Fed.R.Civ.P. 54(b); *In re Fugazy Express, Inc.,* 982 F.2d 769, 775 (2d Cir.1992) (citing *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) and *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 438, 76 S.Ct. 895, 100 L.Ed. 1297 (1956)). The finality requirement serves the purposes of judicial economy, efficient administration of justice and avoidance of undue delay caused by interlocutory appeals in the disposition of the merits of discrete controversies. *See, e.g., In re Sonnax,* 907 F.2d 1280, 1285 (2d Cir.1990); *In re Frontier Props., Inc.,* 979 F.2d 1358, 1363 (9th Cir.1992) ("Traditional finality concerns still dictate, however, that '[w]e avoid having a case make two complete trips through the appellate process.' ") (quoting *In re Vylene Enter.,* 968 F.2d 887, 895 (9th Cir.1992)). To this end, as a general rule, a federal civil action is regarded as a "single judicial unit" which permits only one appeal at the time the rights of the parties are conclusively determined and embodied in a "final order."

*See Fugazy,* 982 F.2d at 775; *In re Saco Local Dev. Corp.,* 711 F.2d 441, 443 (1st Cir.1983).

Several features of bankruptcy proceedings have prompted Congress and the courts to carve out a significant exception to the finality doctrine applicable in bankruptcy appeals. By their very nature, bankruptcy cases involve numerous parties asserting varied claims. These multiple claims, although ultimately connected and interdependent by virtue of whatever constitutes the debtor's estate, are often separable and discrete, and are resolved at various times and procedural stages of proceedings that typically extend over long periods of time. *See, e.g., In re Chateaugay Corp.,* 880 F.2d 1509, 1511 (2d Cir. 1989). The bankruptcy action as a whole encompasses the universe of claims engendered by the petition seeking adjudication of claims against the debtor's property that is subject of the case, as well as satellite adversary proceedings often involving disputes between the debtor's estate and third parties. In short, "a bankruptcy case is simply an aggregation of individual controversies . . . ." that, but for the consolidation in under the aegis of a single proceeding, would be separate lawsuits. 5 *Collier on Bankruptcy* ("*Collier* ") ¶ 5.07[1][b] (Lawrence P. King ed.2002), at 5–18.

■ Because of these distinctions and unique considerations, courts have recognized that the doctrine of finality for appellate purposes requires a more flexible and pragmatic application in bankruptcy cases than in other contexts. *See Fugazy,* 982 F.2d at 775; *Frontier,* 979 F.2d at 1363. Thus, bankruptcy court orders and judgments regarding claims whose resolution is separable from all other matters in dispute

---

5. *See* NOVA Mem., at 8–10.

in the overall proceeding need not await an adjudication of the entire action before they may be appealed. Rather, such determinations could be appealed "if they finally dispose of *discrete disputes within the larger case.*" *Saco,* 711 F.2d at 444 (emphasis in original); *see also Fugazy,* 982 F.2d at 775; *Sonnax,* 907 F.2d at 1283. This exception has both practical and equitable grounding. As the Second Circuit has recognized: "To require that appeals of dispositions of discrete claims be forestalled until the completion of the entire bankruptcy proceeding would seriously delay adjudication of individual claims without significantly advancing final resolution of the larger proceeding." *In re Johns–Manville Corp.,* 824 F.2d 176, 180 (2d Cir. 1987).

Application of the finality doctrine exception to particular circumstances has yielded difficulty and produced varying methods and criteria guiding determinations of appealability. *See generally* 5 *Collier* ¶ 5.07[1][b]. One approach, that urged by NOVA in the case at bar, focuses functionally on the subject of the bankruptcy court's order. Following this course, if the contested determination falls within a category of orders that has been held to be final in other cases, it is considered dispositive as to the case at hand. *See e.g., In re Bodin Apparel, Inc.,* 56 B.R. 728, 729 (S.D.N.Y.1985); *In re Sacred Heart Hosp.,* 212 B.R. 467, 471 (E.D.Pa.1997); *In re Mickelson,* 205 B.R. 190, 193 (D.N.D.1996). Thus NOVA draws from these cases a categorical rule that "decisions as to the priority status of bankruptcy claims are final under 28 U.S.C. § 158 and therefore directly appealable." (NOVA Mem. at 9.)

In support of its position, NOVA relies on language from the First Circuit's ruling in *Saco.* There the court considered an appeal from a ruling that granted priority status to certain payments to an employee benefits plan, even though the bankruptcy court's order left open the question of how much of the claim was entitled to the priority. *See Saco,* 711 F.2d at 446. After reviewing Congressional policy, legislative history and judicial precedents concerning the concept of finality in bankruptcy proceedings, the Circuit Court concluded that a "final judgment, order, or decree" for the purposes of appeal "includes an order that conclusively determines a separable dispute over a creditor's claim or priority." *Id.* at 445–46.

■ This Court cannot endorse the *per se* approach NOVA advocates. The Court does not read in *Saco* or related Second Circuit doctrine a mechanical rule that would determine finality merely by the subject and issue resolved by the bankruptcy court's order. Rather, applicable doctrine demands a much more rigorous inquiry that searches beyond the four corners of the order itself and examines the nature and scope of the dispute to which the bankruptcy court's determination relates. The *Saco* court itself, in construing congressional intent, made clear that for bankruptcy appeal purposes the relevant "judicial unit" is the traditional " 'proceeding' *within* the overall bankruptcy case. . . .", *id.* at 445 (emphasis in original), and that the final order qualifying for as of right appeal must be one that "*conclusively determines a separable dispute* . . . ." *Id.* at 445–46 (emphasis added).

■ In a similar vein, Second Circuit doctrine instructs that the proper analysis guiding determinations of finality for bankruptcy appeal purposes is not solely the subject of the order in question or how it is classified, but the circumstances surrounding the *discrete dispute* between the parties that underlies the particular claim or proceeding. Addressing this point, the Circuit Court has made explicit that: "[b]y 'disputes' we do not mean merely compet-

ing contentions with respect to separable issues; rather, we apply the same standards of finality that we apply to an appeal under 28 U.S.C. § 1291." *Fugazy*, 982 F.2d at 775 (citing *Sonnax*, 907 F.2d at 1283). Further, the *Fugazy* court elaborated that:

> [A] "dispute," for appealability purposes in the bankruptcy context, means at least *an entire claim on which relief may be granted* .... In sum, for a bankruptcy court order to be final within the meaning of § 158(d), the order need not resolve all of the issues raised by the bankruptcy; but *it must completely resolve all of the issues pertaining to a discrete claim,* including issues as to the proper relief.

*Id.* at 775–76 (emphasis added); *In re Integrated Resources,* 3 F.3d 49, 53 (2d Cir.1993); *see also Johns–Manville,* 824 F.2d at 180 (noting that the requirement that "there need only be 'a final decision on the discrete issue at bar' is properly understood as limiting appellate review in bankruptcy cases to issues resolving particular disputes.") (quoting *In re Stable Mews Assoc.,* 778 F.2d 121, 122 (2d Cir. 1985)).

■ Properly understood, therefore, and consistent with the jurisprudence governing 28 U.S.C. § 1291, the concept of a "discrete dispute" would embrace not just the one matter immediately in contention in a given court order, but "all the issues" that comprise "an entire claim" (*Fugazy,* 982 F.2d at 775) in the bankruptcy case that are *outstanding* between particular parties, that the bankruptcy court has under consideration or will be expected to rule upon, and that potentially may become the basis for appeal. On this analysis, the object of the rule is to foster judicial economy and more expeditious disposition of bankruptcy cases by consolidating and adjudicating all appealable issues engendered by the same claim into one appellate proceeding, rather than considering their appeals of separable issues serially as and when they arise in the bankruptcy court's various orders.

■ These principles confirm that there can be no bright-line or talismanic test by which, for appellate purposes, to assess the finality of a bankruptcy court determination merely by the subject or rubric of the order. The exception to the rule crafted with respect to bankruptcy proceedings recognizes that it should not be necessary for the parties to wait until the conclusion of the whole action in order to file an appeal. It also directs that, so as to avoid premature, unnecessary or improvident appellate litigation involving the same parties and the same claim, disputes within the larger bankruptcy case must be treated as analogous to separate, stand-alone controversies, the orders and judgments of which are appealable, as correspondingly provided for under 28 U.S.C. § 1291, when all the rights of the parties involved in the particular dispute have been conclusively determined, "leaving nothing for the ... court to do but execute the order." *Fugazy,* 982 F.2d at 775 (citing *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)); *see also Integrated Res.,* 3 F.3d at 53 ("It is a basic rule of finality that 'only when nothing save ministerial tasks relating to computation of damages remains can a mere determination of liability be construed as a [28 U.S.C. § 1291] 'final decision.' '") (citation omitted).

■ Under principles governing the finality doctrine relating to analogous non-bankruptcy jurisprudence, a district court determination is not a final, appealable order, for example, if it resolves the merits of claim as to liability, but leaves open the computation of damages, or is subject to an accounting, or to some appropriate

sanction. *See, e.g., Fugazy,* 982 F.2d at 775. By the same token, a bankruptcy court ruling that adjudicates one element of a discrete dispute within the larger case but does not resolve some essential aspect of the parties' respective rights and obligations, leaving uncertainties and other matters pending that would require further proceedings to settle, would not qualify as a final order for the purposes of § 158. *See id.* at 776 (citing cases).

In fact, whether or not a separable bankruptcy dispute has been conclusively resolved and the court's decision embodied in a final order may depend on several considerations that transcend the bare fact of the issuance of a bankruptcy court's order addressing a particular issue in contention. As a separable "judicial unit," a bankruptcy claim involving particular parties is akin to a stand-alone case or controversy; it may entail the assertion of multiple rights and duties, as well as various defenses that might diminish or defeat the claim. A given claim might engender an extensive dispute simultaneously or at different points in the course of the proceeding raising multiple issues between the same parties, for example—as is the matter at hand—contesting the timeliness, or priority, exemptions or secured status of the claim. The finality of a determination addressing any of these issues may be affected by what the parties themselves may assert and understand as the scope of the matter in controversy, by what the bankruptcy court manifests as the reach of its rulings concerning an issue it has con-

sidered and purports to resolve, or perhaps even by the known, related actions of third parties that could bear on the ultimate outcome of the bankruptcy court's decision.

These principles are illustrated in several cases from this Circuit. In *Integrated Resources,* the Second Circuit found that the bankruptcy court order at issue did not finally dispose of the dispute between the parties when it became apparent during appellate oral argument that the parties remained significant sums apart as to the amount of a liability in contention, and that the bankruptcy court's approval of a breaking-fee arrangement could not have conclusively settled the separable dispute until an accounting was completed determining what damages were due. 3 F.3d at 53. Similarly, in *In re Duke & Benedict, Inc.,* 278 B.R. 334, 341–42 (S.D.N.Y. 2002), the district court dismissed an appeal of a declaratory judgment rendered in a bankruptcy proceeding upon finding that: (1) the bankruptcy judge did not dispose of all of the parties' outstanding claims, which arose from a property development agreement, that were presented at the bankruptcy court's oral argument on the parties' summary judgment motions, but instead deferred decision and tailored a narrower decision, *see id.* at 342; and (2) many of the issues underlying the proceeding were contingent upon future action by a municipal agency, some of which could render moot a number of the concerns raised in the appeal.[6] *Id.*

---

**6.** *See also Chateaugay,* 922 F.2d at 91–92 (order granting partial summary judgment in bankruptcy proceeding held to be interlocutory until the bankruptcy court ruled on outstanding issues and certified entry of a final judgment); *Frontier Props.,* 979 F.2d at 1363 (holding that a bankruptcy court order allowing damages as an administrative expense priority was not final because it determined potential liability but not damages, and the

Circuit Court noted that the bankruptcy ruling "was a prospective one affecting the priority of a potential claim, and further activity of the parties was required before their rights were conclusively determined."); *In re Goldblatt Bros., Inc.,* 758 F.2d 1248, 1251 (7th Cir.1985) (finding that bankruptcy court's order appealed from was not final where the determination left issues pending between the parties over the size of the claim that required

In synthesis, the thrust of these cases appears to be that, for the purposes of appeal, the touchstone for determining the finality of a bankruptcy court's ruling concerning the priority of a claim is not the fact of the issuance of the judgment itself, but the scope of an overarching claim or dispute between the parties. In some cases the priority status of the claim may be but one element of the relevant larger controversy. In this connection, insofar as other aspects of the dispute surrounding the claim may remain pending—either under deliberation by the bankruptcy court or asserted by a party but not yet considered by the court—that potentially could give rise to additional rounds of appeals, a priority determination, while resolving one particular *issue* in contention, does not conclusively dispose of the parties' entire claim or *dispute*. Under these circumstances, such an order would not be final for the purposes of appeal pursuant to § 158(a).

Moreover, in assessing whether or not a bankruptcy court decision establishing the priority of a claim is a final order, that such determinations may have been found to be appealable in other cases, or even the incidence with which such rulings have been sustained, though relevant considerations, should not be deemed reflexively the beginning and end of the inquiry. Thus, to identify the contours and elements of a "discrete dispute" between particular parties within the larger bankruptcy case may require a more searching analysis that probes into the whole cluster of issues constituting the entire controversy that, from the record of the proceeding,

existed between the parties and was still pending at the time the bankruptcy court rendered the order disposing of the issue that is the subject of the appeal in question. Potentially, any open questions still unresolved as between those parties could require further action within the bankruptcy proceeding, and additional bankruptcy court consideration, before the parties' rights are conclusively settled. Such other litigation could give rise to multiple grounds for appeal that should be considered together rather than piecemeal.

Here, Premier contends that the Bankruptcy Court's Reclassification Order endorsing Premier's objection was interlocutory because issues remain to be decided with regard to the Amended Claim. Specifically, as stated above, Premier points out that the Amended Claim was filed after the Claims Bar Date and altered the nature of the claim so as to effectively render it a new claim. Premier notes that at the time it opposed NOVA's priority claim, it reserved its rights to further object to the Amended Claim on these other grounds. Premier also cites indications that the Committee has also signaled concerns about the Amended Claim.

Applying the principles and precedents discussed above, the circumstances Premier cites might qualify as indicators that, though the Reclassification Order resolved the priority status of NOVA's claim, it did not conclusively adjudicate the parties' larger dispute with regard to the Amended Claim and that additional litigation, potentially giving rise to other issues for appeal, is certain to ensue.

further litigation between the parties to resolve and more than mechanical or ministerial consideration by the bankruptcy court); *cf. In re Natale,* 295 F.3d 375, 380 (3rd Cir.2002) (reversing the district court's ruling that a bankruptcy court judgment granting priority to a claim was a final order, and distinguishing *Saco* on the ground that the case "did not address a situation such as that here involving the scope of an ongoing adversary proceeding when it is asserted that an order is final and appealable with issues still extant in the adversary proceeding.")

Premier's argument, however, manifests two basic flaws. First, while indicating that it reserved its rights to further object to the Amended Claim, nowhere does Premier assert that it actually did contest the Amended Claim on additional grounds, nor that those objections were of record in the bankruptcy court at the time the priority issue was under consideration. Premier's formal assertion of any additional rights or defenses, if known to the bankruptcy court, could provide grounds for a finding that the extant larger dispute between the parties—the "entire claim on which relief may be granted", *Fugazy*, 982 F.2d at 775–76—encompassed issues beyond the priority of NOVA's Amended Claim and that the bankruptcy court reserved judgment on other pending questions while disposing of the Amended Claim's priority status. Premier's reserved but unasserted rights or defenses, however, cannot form a basis for such a finding.

Similarly, though pointing to a potential objection by the unsecured creditors, Premier does not state that the reasons for this challenge form part of Premier's own separable, discrete dispute, or that Premier has formally joined the Committee as a party in opposing NOVA's Amended Claim on other grounds that may have material implications for the effect of the Reclassification Order. Premier cannot construct a footing to enlarge the issues entailed in its dispute with NOVA, and to expand the scope of its challenge to NOVA's appeal, by asserting rights and defenses of third parties that they themselves have not yet articulated.

It thus appears that on the record before the Bankruptcy Court at the time the Reclassification Order determined the priority issue, the entire known discrete dispute between the parties to the instant appeal encompassed only the priority status of the Amended Claim. If so, the Bankruptcy Court's Reclassification Order disposed of the relevant controversy and would be appealable as of right. Accordingly, unless Premier can demonstrate convincing evidence to the contrary on the record of this appeal, the Court must deny Premier's motion to dismiss. The Court directs the parties to brief the merits of the issue on appeal in accordance with a stipulated schedule to be submitted to the Court within ten days of this Order.

### III. *ORDER*

For the reasons described above, it is hereby

**ORDERED** that appellee Premier's Operations Ltd. motion to dismiss the appeal of appellant NOVA Information Systems, Inc. is DENIED; and it is further

**ORDERED** that within ten (10) days of the date of this Order the parties shall submit to the Court a stipulated schedule with respect to briefing the merits of this appeal.

**SO ORDERED.**